Kevin D. Lally (SBN 095374)
Edward Romero (SBN 148495)
GREENAN, PEFFER, SALLANDER & LALLY LLP
6111 Bollinger Canyon Road, Suite 500
San Ramon, California 94583
Telephone: (925) 866-1000
Facsimile: (925) 830-8787
Email: Eromero@gpsllp.com

Mary McNamara (SBN 147131)
August Gugelmann (SBN 240544)
SWANSON, McNAMARA & HALLER LLP
300 Montgomery Street, Suite 1100
San Francisco, California 94104
Telephone: (415) 477-3800
Facsimile: (415) 477-9010
Email: MMcnamara@SMHlegal.com

Attorneys for Plaintiffs
MASSIMILIANO MARTONE and
MARTONE RADIO TECHNOLOGY, INC.

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MASSIMILIANO MARTONE, an individual; MARTONE RADIO TECHNOLOGY, INC., a Nevada Corporation,<br><br>Plaintiffs,<br><br>vs.<br><br>DAVID BURGESS, an individual; KESTREL SIGNAL PROCESSING, INC., a California Corporation; RANGE NETWORKS, INC<br><br>Defendants. | Case No. CV 08 2379 CW<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES OF PLAINTIFFS MASSIMILIANO MARTONE AND MARTONE RADIO TECHNOLOGY IN OPPOSITION TO MOTION TO DISMISS OF DEFENDANTS DAVID BURGESS, KESTREL SIGNAL PROCESSING, INC. AND RANGE NETWORKS, INC.**<br><br>Date: August 28, 2008<br>Time: 2:00 p.m.<br>Courtroom: 2<br>[The Honorable Claudia Wilken] |

Plaintiffs Massimiliano Martone ("Martone") and Martone Radio Technology, Inc.

("MRT") submit this Memorandum in Opposition to the Motion to Dismiss of defendants David

Burgess, Kestrel Signal Processing, Inc. and Range Networks, Inc. as follows:

Greenan,
Peffer,
Sallander &
Lally LLP

# TABLE OF CONTENTS

Table of Authorities ......................................................................................................................iii

INTRODUCTION ..........................................................................................................................1

THE ALLEGATIONS OF THE COMPLAINT ............................................................................4

1. The Parties.................................................................................................................................4

2. The Proprietary Information Agreement ...................................................................................5

3. The Allegations and Claims for Relief Asserted Against Burges and Kestrel ........................7

4. The Allegations and Claims for Relief Asserted Against Range ............................................10

POINTS AND AUTHORITIES ...................................................................................................10

1. The Standard Governing This Motion.....................................................................................10

2. The Senate Report on Assembly Bill 501 ..............................................................................11

3. The Uniform Trade Secrets Act ..............................................................................................12

A. Purpose of the Uniform Act ...................................................................................................12

B. Preemption of State Laws .......................................................................................................12

4. California's Revisions to Section 7 of the Uniform Act .........................................................13

5. The Legislative Amendments to the California Act ................................................................13

A. As introduced on February 7, 1983........................................................................................13

B. As Amended in Assembly April 21, 1983 ..............................................................................14

C. As Amended in the Assembly on May 3, 1983.......................................................................14

D. As Amended in Senate July 6, 1984 .......................................................................................14

E. As Amended in Senate August 15, 1984 ................................................................................15

6. Plaintiffs' Claim for Fraud and Deceit Is Not Preempted and is Alleged
   With the Specificity Required by Rule 9 of the Federal Rules of Civil Procedure ..........15

7. The Motion to Dismiss the Claim for Breach of the Implied Covenant of
   Good Faith and Fair Dealing is Properly Denied.............................................................17

8. Plaintiffs' Claim for Unjust Enrichment is Not Preempted...................................................18

9. Plaintiffs' Claim for Injunctive Relief is not Preempted ....................................................20

10. The California Act Does not Preempt Claims Under the Unfair Competition Law.........20

Greenan,
Peffer,
Sallander &
Lally LLP

i

11. Preemption Under the California Act is Not Ripe for Adjudication by This Motion.......21

CONCLUSION.........................................................................................................................22

## **TABLE OF AUTHORITIES**

### **CASES**

*Ackerman v. Northwestern Mutual Life Insurance Company*,
   172 F.3d 467 (7th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Ajaxo Inc. v. E\*Trade Group, Inc.*
   135 Cal. App. 4th 21 (2005) , rehearing and review denied (2006) . . . . . . . .  19

*Ali v. Fasteners for Retail, Inc.*
   544 F. Supp. 2d 1064 (E.D. Cal. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*American Credit Indemnity Company v. Sacks*
   213 Cal. App. 3d 622 (1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

*Cadence Design Systems, Inc. v. Avant! Corporation*
   29 Cal. 4th 215 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*Callaway Golf Company v. Dunlop Slazenger Group, Americas, Inc.*
   318 F.Supp.2d 216 (D. Del. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21, 22

*Concha v. London*
   62 F.3d 1493 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Diaz v. Kay-Dix Ranch*
   9 Cal. App. 3d 588 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Ghirardo et al. v. Antonioli, et al.*
   14 Cal. 4th 39 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*G.S. Rasmussen & Assoc., Inc. v. Kalitta Flying Services, Inc.*
   958 F.2d 896  (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21

*Harm v. Frasher*
   181 Cal. App. 2d 405, 417. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

*Harrison v. Westinghouse Savannah River Co.*
   176 F.3d 776 (4th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

*Hirsch v. Bank of America*
   107 Cal. App. 4th 708, (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Lectrodryer v. SeoulBank*
   77 Cal. App. 4th 723 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  19

*Lewis v. Telephone Employees Credit Union*
   87 F.3d 1537 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*McClain v. Octagon Plaza*
   *LLC*, 159 Cal. App. 4th 784 (2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17, 18

*Moore v. Kayport Package Express, Inc.*
   885 F.2d 531 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  17

Greenan,
Peffer,
Sallander &
Lally LLP

*Navarro v. Block*
   250 F.3d 729 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

*Nordberg v. Trilegiant Corporation,*
   445 F. Supp. 2d 1082, 1100-1101 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . 18, 19

*Peterson v. Cellco Partnership,*
   2008 WL 2536073 at 6 (June 26, 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Sanderson v. HCA-the Healthcare Co.*
   447 F.3d 873, 876 (6th Cir. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Shapiro v. UJB Financial Corporation*
   964 F.2d 272, 285 (3rd Cir. 1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Smith v. San Francisco*
   225 Cal. App. 3d 38, 49 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Van Buskirk v. Cable News Network, Inc.*
   284 F.3d 977, 980 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11

*Walker v. USSA Casualty Insurance Company*
   474 F. Supp. 2d 1168,  (E.D. Cal. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Weststeyn Dairy 2 v. Eades Commodities Co.*
   280 F. Supp. 2d 1044, 1075. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

**Codes & Statues**

18 United States Code
   Section 1030. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9, 20

Business & Profes. Code
   Section 17200 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3, 20

Civil Code
   Section 3426. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11
   Section 3426,2. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   20
   Section 3426.3. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20
   Section 3426.7. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 18
   Section 3426.8. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   14
   Section 3426.10. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   11

Federal Rules of Civil Procedure
   Rule 9 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15, 16, 17
   Rule 12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  10, 11

Miscellaneous

1 Witkin, Contracts, (10th ed.)

   Section 798 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18
   Section 1013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

Greenan,
Peffer,
Sallander &
Lally LLP

Plaintiffs' Memorandum In Opposition to Motion to Dismiss            Case No.  CV 08 2379 CW

**INTRODUCTION**

The assertion that six of the ten claims for relief in this action are preempted by the California Uniform Trade Secrets Act (the "California Act") is based on an unreasonably broad interpretation of the Act and on a perfunctory and inaccurate characterization of the complaint. Indeed, most of the authorities relied upon by Defendants in support of this motion fail to examine in detail either the legislative history of the Act or the Commissioners' Comments to the model Uniform Trade Secrets Act (the "Uniform Act") on which substantial portions of the California Act are based.  An examination of these authorities makes clear that the California Act is not a comprehensive remedy and does not apply to duties imposed by law that are not dependent on the existence of a "trade secret."  Rather, the California Act applies only to the misappropriation of "trade secrets" and preempts only those claims that are based on such "misappropriation."  The California Act does not apply to the alleged misappropriation of other forms of tangible or intangible property such as confidential, proprietary or other business information or property rights.  Moreover, the California Act expressly states that it does not affect contractual remedies regardless of whether they are based on the misappropriation of a trade secret.  As a result, claims based on allegations that are similar to, but distinct from, allegations of trade secret misappropriation are not preempted.  Aside from the claim for common law misappropriation, the claims for relief asserted against defendants David Burgess ("Burgess"), Kestrel Signal Processing, Inc. ("Kestrel") and Range Networks, Inc. ("Range") are based on allegations which are distinct from the misappropriation of plaintiffs' trade secrets.

Specifically, the complaint alleges that Burgess and Kestrel served as consultants to Martone and MRT.  Before beginning their work, Burgess and Kestrel allegedly agreed in a writing entitled "Proprietary Information Agreement" (the "Agreement") to, *inter alia*, preserve and protect the "proprietary information" of Martone and MRT to which Burgess and Kestrel were exposed as consultants.  Burgess and Kestrel further obligated themselves not to use any proprietary information obtained from Plaintiffs for any purpose other than for the work performed for Martone and MRT.  The Agreement, however, does not identify which "proprietary information" constitute "trade secrets."  Rather, it applies the term "proprietary

1  information" to "any documented information originated by, or peculiarly within, the knowledge
2  of [the parties] or their suppliers." Notwithstanding the contractual duties assumed by Burgess
3  and Kestrel, these defendants nonetheless accessed, without authority and with the intent to
4  defraud, the computers of MRT and took items of value in violation of the Computer Fraud and
5  Abuse Act, 18 U.S.C. section 1030 *et seq*. The remedies provided by this statute include both
6  compensatory damages, injunctive and other equitable relief.

7  Similarly, plaintiffs' claim for fraud and deceit is based in part on the promises and
8  representations made by Burgess and Kestrel in the Agreement. These representations include
9  defendants' promise that unless otherwise agreed in writing, only Burgess would review
10  plaintiffs' proprietary information and only Burgess would work on the software developed by
11  MRT. Notwithstanding these promises and representations, Burgess and Kestrel failed to
12  preserve and protect not only plaintiffs' trade secrets, but also their tangible and intangible
13  property rights consisting, *inter alia*, of plaintiffs' confidential and proprietary information. The
14  complaint further alleges that defendants billed plaintiffs for work performed by unauthorized
15  consultants who had substantially less education, training and experience than Burgess and
16  defendants did so without disclosing these facts to plaintiffs. As such, the allegations supporting
17  this claim are not only pled with the specificity required by Rule 9(b) of the Federal Rules of
18  Civil Procedure, but are also based on allegations other than the misappropriation of plaintiffs'
19  trade secrets. As such, the Fourth Claim for Relief for fraud and deceit is not preempted by the
20  California Act.

21  Likewise, the assertion that the claim for breach of the implied covenant of good faith
22  and fair dealing should be dismissed because it states no independent basis for relief other than
23  for breach of the Agreement is nonsense. California law is clear that the covenant of good faith
24  and fair dealing is implied in every contract and accords a party to a contract with the right to
25  assert a claim for breach of the implied covenant. Indeed, California law requires the existence
26  of a contract as a prerequisite for any action for breach of the covenant. Moreover, the complaint
27  does not allege that this claim is based on a contract of insurance or on a relationship giving rise
28  to a claim for tortious breach of the implied covenant. As such, the assertion that a claim for

1    tortious breach of the implied covenant is preempted by the California Act is not ripe for

2    adjudication and is properly denied on this ground.

3           Furthermore, the California Act expressly provides for unjust enrichment as a measure of

4    damages.  Moreover, unjust enrichment is a form of restitution and restitution is a contractual

5    remedy which is not preempted by the California Act.  Additionally, the California Act, the

6    Computer Fraud and Abuse Act and federal law expressly authorize the remedy of injunctive

7    relief.  As such, neither Burgess nor Kestrel can reasonably contend that the Eighth Claim for

8    Relief for unjust enrichment and the Tenth Claim for injunctive relief are preempted by the

9    California Act.

10          Additionally, the claims against Burgess and Kestrel for violation of the Unfair

11   Competition Law, Cal. Bus. & Profs. Code section 17200 *et seq.* (the "UCL"), are based not only

12   on the misappropriation of plaintiffs' trade secrets, but also on the wrong doing noted above.

13   Such wrong doing not only constitutes unlawful and fraudulent conduct but also unfair business

14   practices which are proscribed by the UCL.  The California Act therefore does not preempt the

15   Seventh Claim for Relief for violation of the UCL.

16          Other than the claim for common law misappropriation, the claims asserted against

17   Range are also based on allegations other than the misappropriation of trade secrets.

18   Specifically, Range is alleged to have solicited investors through the use of unauthorized

19   photographs of MRT's offices and equipment and through the unlawful use of tangible and

20   intangible property rights such as its software, hardware and other intellectual property.  Indeed,

21   the complaint alleges that Burgess "admitted" that a reuse of the software developed by MRT

22   might be necessary for Range to develop its own BTS.  Moreover, the complaint alleges that

23   Range is developing software that is identical or equivalent to the software developed by

24   plaintiffs through the employment of the same consultants used by Kestrel to develop software

25   for plaintiffs.  These allegations therefore make clear that plaintiffs' claims for violation of the

26   UCL, unjust enrichment and injunctive relief are based on allegations that are distinct from the

27   misappropriation of plaintiffs' trade secrets.

28

This motion is properly denied for yet another reason. Case law, including some of the authorities relied on by Defendants, recognize that a claim of preemption under the California Act may not be ripe for determination on a motion to dismiss. This is especially so at the pleading stage when it is difficult, if not impossible, to determine whether a particular property right is a trade secret or merely a property interest that is subject to laws other than the California Act. Such is the case here. Defendants have allegedly stolen a host of plaintiffs' tangible and intangible property interests and have profited from their unlawful use. Moreover, Defendants have not answered the complaint and they will likely assert either in their answers, or in dispositive motions, that some or all of the allegedly misappropriated property interests are not trade secrets. To therefore determine at this stage of the case that plaintiffs' state law claims are preempted based on nothing more than defendants' characterization of the complaint would work an injustice to Martone and MRT should defendants later contend that plaintiffs' trade secrets are not trade secrets but rather property interests that are subject to the very claims dismissed at the pleading stage. It is therefore appropriate for plaintiffs to allege, in the alternative, common law and statutory claims for misappropriation of trade secrets as well as claims arising under California law which protect the tangible and intangible property interests that are not trade secrets.

Accordingly, Martone and MRT respectfully request that this Court deny this motion in its entirety. Alternatively, Martone and MRT respectfully request that they be given leave to amend their complaint should this Court determine that some of the claims are preempted by the California Act. Plaintiffs further seek leave to amend their complaint as warranted, including leave to amend their prayer for damages or other relief and to plead their claim for fraud and deceit with the specificity this court may require.

## THE ALLEGATIONS OF THE COMPLAINT

**1.    The Parties.**

The complaint alleges that Martone holds a doctorate in electronic engineering and is the founder, president, chief executive and shareholder of MRT. Complaint, ¶1. The complaint further alleges that MRT designs, develops and supplies high-performance wireless transceivers

and geo-location devices to customers worldwide and to the defense and intelligence agencies of the United States. *Id.* MRT is further alleged to be "involved in supporting many sensitive intelligence missions on behalf of the United States" and its devices are subject to the Arms Export Control Act, 22 U.S.C. section 2751 *et seq.* Complaint, ¶1.

One of the devices which MRT supplies to its customers "is a portable base station transceiver ("BTS") for cellular communications. Complaint, ¶2. The BTS developed by MRT (the "MRT-BTS") is a portable transmitter and receiver that relies on both software and hardware that was conceived, designed and developed by Martone and MRT. Complaint, ¶2.

From approximately September 2004 to October 2007, plaintiffs allegedly retained Burgess to develop software for specific aspects of the MRT-BTS. Complaint, ¶3. In or about August 2005, Burgess formed Kestrel through which he performed his consulting services to plaintiffs until approximately October 2007. Complaint, ¶¶3, 26. Like Kestrel, Range is alleged to be a California corporation. Complaint, ¶¶13, 14. Plaintiffs allege on information and belief that Burgess is a shareholder and director of Range. Complaint, ¶14.

**2.     The Proprietary Information Agreement.**

Before starting his work for plaintiffs, Burgess entered into the Agreement. Complaint, ¶5, 23. Kestrel is also alleged to have assumed the obligations and duties in the Agreement. Complaint, ¶125. The Agreement is attached as Exhibit 1 to the Complaint and its terms are incorporated by reference in the pleading. Complaint, ¶23.

The recital to the Agreement states that "the parties desire to provide a mechanism and capability for the exchange of "Proprietary Information" concerning the GSM project." Complaint, ¶¶5, 28 and Exhibit 1 at 1. Likewise, the first paragraph of the Agreement provides, in part, that:

> it may be appropriate for the parties to exchange technical, financial or other competitive-sensitive information, *some of which may be deemed to be proprietary* to the disclosing party. Such disclosure shall be subject in each instance to the concurrence of both parties.

Complaint, Exhibit 1, ¶1 at 1 (emphasis added).

1    The Agreement does not define the term "trade secret" nor does it identify proprietary

2    information that constitutes a "trade secret." Rather, paragraph 2 of the Agreement states that

3    "Proprietary Information:"

> shall be construed to mean *any documented information originated by or peculiarly
> within the knowledge of the disclosing party or its suppliers,* which information is
> appropriately marked or otherwise clearly identified in writing as being proprietary at the
> time of its disclosure to the receiving party. If such information is disclosed in other than
> tangible form (e.g., orally, visually, electronically or like manner), that information must
> be identified as Proprietary at the time of disclosure and summarized and submitted in
> writing to the recipient by the disclosing party within (30) calendar days from the date of
> disclosure.

9    Complaint, Exhibit 1, ¶2 at 1-2 (emphasis added). Paragraphs 2(a) through 2(i) of the

10   Agreement contain a list of exceptions to the term "Proprietary Information." *See* Complaint,

11   Exhibit 1 at 2.

12   In paragraph 3, Burgess represents that, with respect to Proprietary Information disclosed

13   to him, he will not:

> (a) use such information for purposes other than to advance the purposes set forth [in the
> Agreement]; or

> (b) disclose such information to persons other than those of [his] employees or
> consultants having a direct need to know and use such information, unless further
> disclosure is approved in writing signed by an authorized representative of the disclosing
> party. Disclosure of such information to any employee or consultant shall be subject to
> the Export Control Laws and also to all restrictions set forth herein and the employee or
> consultant shall agree in writing to be bound thereby. The disclosing party shall be
> notified in writing of the name and address of any consultant to whom Proprietary
> Information is disclosed.

20   Complaint, Exhibit 1, ¶3 at 2-3. The obligation not to disclose Plaintiffs' Proprietary

21   Information continues until the information falls within one of the many exceptions set forth in

22   paragraph 2(a) through 2(i) of the Agreement.

23   In paragraph 4, the parties further agree that "[a]ll Proprietary Information forwarded" to

24   each other "shall be received only by Burgess for himself and Martone for himself, or a

25   substitute designated in writing for the named individual, who shall confirm in writing the

26   receipt of such information." Complaint, ¶¶24, 80 and Exhibit 1 at 3.

27   In the Addendum, located at page 6 of the Agreement, Burgess further "agrees and

28   understands" that the work performed by him:

> is work for hire and as such Burgess agrees that Martone will be the owner of all inventions, technology, designs, algorithms, work of authorship, mask works, technical information, computer software, business information, and other information conceived, developed or otherwise generated.  Burgess agrees to assist Martone at Martone's request and expense, in obtaining, maintaining and enforcing patent and other intellectual property protection.

Complaint, ¶25 and Exhibit 1 at 6.  Burgess also agrees that:

> Information provided by Martone to Burgess remains property of Martone.  Burgess agrees to comply with the terms of any confidential disclosure agreement.  Burgess agrees not to use Martone-provided information for any purpose except to perform contract work related to the GSM project.

Complaint, ¶25 and Exhibit 1 at 6.

**3.    The Allegations and Claims for Relief Asserted Against Burgess and Kestrel.**

As part of the GSM project, plaintiffs allegedly developed the MRT-BTS.  Complaint, ¶28.  As part of the GSM project, Burgess and Kestrel were provided "access to the MRT software repository which contains all of the source code, algorithms and software developed by Martone and MRT."  Complaint, ¶29.  Additionally, Burgess was assigned the responsibility of writing portions of the software for the MRT-BTS.  Complaint, ¶33.  As part of this process, Burgess drafted a document regarding the software to be used in the device.  *Id*.  The drafting of this document exposed him to the engineering architecture of the MRT-BTS, its functional hardware and software partitioning and the algorithms to be used in the project.  Complaint, ¶33.  Burgess also developed software for the voice processing aspect of the MRT-BTS.  *Id*.  ¶37.

Notwithstanding the contractual obligations to protect the information obtained from plaintiffs, Burgess and Kestrel allegedly:

> •Photographed, without authorization, commercially sensitive areas of MRT. (Complaint, ¶39-41);
>
> •Reviewed commercially sensitive documents in the office of Martone without Martone's permission.  (Complaint, ¶42);
>
> •Questioned plaintiffs' employees about MRT technology unrelated to the work to be performed by Burgess.  (Complaint, ¶¶43-45);
>
> •Discussed with the chief technology officer of Tropos Networks, Inc. ("Tropos") about the wireless equipment used by MRT.  (Complaint, ¶46);
>
> •Revealed to Tropos the hardware used by MRT to conduct its mapping and surveying techniques and how the software for such hardware works.  (Complaint, ¶47);

- Disclosed to Tropos how MRT monitors wireless networks through the use of specific, sensitive techniques and components.  (Complaint, ¶48);

- Formed Range for the purpose of developing a BTS that was based on the same technical standard as used in the MRT-BTS.  (Complaint, ¶¶49-55);

- Proposed giving potential investors in Range a demonstration of the BTS to be developed by Range.  The proposed demonstration, however, would duplicate both the functions of the MRT-BTS and the demonstrations which plaintiffs had earlier given to investors and customers of MRT.  (Complaint, ¶¶52, 53);

- Further proposed that the Range demonstration would showcase the voice processing capability of the Range BTS notwithstanding that Burgess had worked on this same aspect for the MRT-BTS.  (Complaint, ¶52);

- Threatened to "raid" employees from other companies as soon as he received funding for his venture.  (Complaint, ¶55);

- Attempted to discover further technical information about MRT.  (Complaint, ¶¶56-57);

- Admitted to Martone that the "reuse" of software developed by MRT might be necessary in the development of the BTS proposed by Range.  (Complaint, ¶60);

- Disclosed sensitive, unclassified information of MRT to businesses and investors which included the development, use and employment of the MRT-BTS; the intelligence applications of the MRT-BTS; the commercial applications of the MRT-BTS and aspects of the software, hardware, algorithms and system architecture that MRT uses in its devices.  (Complaint, ¶62-63);

- Took the trade secrets and intellectual property of MRT (Complaint, ¶¶64-69);

- Downloaded source code, computer files and software of MRT without authorization, including files containing sensitive and proprietary information.  (Complaint, ¶¶70-72);

- Transmitted to a third party named Jon Metzler, without authorization, information about the status, condition and performance of the MRT-BTS.  (Complaint, ¶¶73-75).

- Transmitted to a third party named Raffi Sevlian, without authorization, the source codes and algorithms developed by MRT for use in its BTS and other devices. (Complaint, ¶¶76-78);

- Transmitted plaintiffs' intellectual property to Raffi Sevlian for the purpose of developing a database of MRT's intellectual property.  (Complaint, ¶78);

- Employed software consultants other than Burgess to review MRT intellectual property and create the software requested by plaintiffs.  (Complaint, ¶¶79-83);

- Billed plaintiffs for work performed by software consultants who were not disclosed to plaintiffs and who had substantially less education, training and experience than Burgess. (Complaint, ¶83) and

- Photographed MRT equipment without autorization.  (Complaint, ¶¶84-88).

As a result of these and other allegations, the complaint asserts ten claims for relief against Burgess and Kestrel. The first claim asserted against Burgess and Kestrel is for violation of the Computer Fraud and Abuse Act, 18 U.S.C. section 1030(a) *et seq*. Complaint, ¶¶93-98. The complaint asserts that Burgess and Kestrel "knowingly *and with the intent to defraud*, accessed the MRT computer without authorization and by exceeding the authorization provided to them" thereby obtaining something of value. Complaint, ¶95 (emphasis added).

The second claim is for violation of the California Act. Complaint, ¶¶99-109. The pleading alleges, on information and belief, that Burgess and Kestrel disclosed Plaintiffs' trade secrets to Range and others. Complaint, ¶103. Plaintiffs further allege on information and belief that Burgess, Kestrel and Range have used their trade secrets to develop a device which competes with the MRT-BTS. Complaint, ¶103.

The third claim is for common law misappropriation of trade secrets. Complaint, ¶¶110-117. The fourth claim is for fraud and deceit. Complaint, ¶¶118-122. In support of the Fourth Claim, the complaint asserts that Burgess and Kestrel promised, represented and agreed to protect the trade secrets and intellectual property of Martone and MRT. Complaint, ¶119. Burgess and Kestrel are further alleged to have promised, represented and agreed that they would bill Plaintiffs only for the services provided by Burgess. Complaint, ¶119.

The fifth claim is for breach of the Agreement. Complaint, ¶¶123-127. This claim is not at issue in this motion. The sixth claim is for breach of the implied covenant of good faith and fair dealing and is the subject of this motion. Complaint, ¶¶128-131. The seventh claim is for violation of the Unfair Competition Law. Complaint, ¶¶132-134. In support of this claim, Plaintiffs allege that "[t]he conduct of Burgess, Kestrel, and Range as set forth above constitutes unlawful, fraudulent and/or unfair business practices which gives defendants a competitive advantage and which violates" the Unfair Competition Law. Complaint, ¶133.

The eighth and tenth claims are for, respectively, unjust enrichment and injunctive relief. With respect to the claim for unjust enrichment, the complaint alleges, *inter alia,* that "Burgess, Kestrel and Range have benefitted and continue to benefit from their wrongdoing and have been unjustly enriched . . . ." Complaint, ¶136. With respect to the claim for injunctive relief, the

1  complaint alleges that "[d]efendants have misappropriated the trade secrets and intellectual

2  property" of plaintiffs and that "[i]n the absence of an injunction prohibiting Burgess, Kestrel

3  and Range from using and profiting from the use of plaintiffs' trade secrets and intellectual

4  property, plaintiffs will have no adequate remedy at law." Complaint, ¶¶143.

5  **4.  The Allegations and Claims for Relief Asserted Against Range.**

6  Range was allegedly formed "for the purpose of developing and marketing a BTS device

7  that is based on the same technical standards and performs the same functions as the MRT-BTS."

8  Complaint, ¶7.  Range is also alleged, on information and belief, to have used plaintiffs' trade

9  secrets "to develop a BTS device to compete with the MRT-BTS." Id. ¶103.  Range is also

10  alleged to "know, or have reason to know, that the trade secrets disclosed to them by Burgess

11  and Kestrel were acquired by improper means or were acquired without the consent of Martone

12  and MRT." *Id.* ¶104.  Range is also alleged to be using the photographs taken by Burgess, and

13  MRT's software and hardware, to seek the funding necessary for Range to develop a BTS.  *See*

14  Complaint, ¶¶89, 90.  Range is further alleged to have developed software that is identical or

15  equivalent to that of MRT, by employing the same consultants which Burgess and Kestrel

16  deceitfully used to develop software for plaintiffs.  *Id.* ¶91

17  Range also proposed giving potential investors a demonstration of the BTS which it

18  intended to develop.  *Id.* ¶51.  The demonstration, however, would duplicate both the functions

19  of the MRT-BTS and the demonstrations which plaintiffs had earlier given to investors and

20  customers of MRT.  *Id.* ¶¶52, 53.  Moreover, Burgess proposed that Range showcase the voice

21  processing capability of its BTS notwithstanding that Burgess had worked on this same aspect

22  for the MRT-BTS.  Complaint, ¶52.

23  **POINTS AND AUTHORITIES**

24  **1.  The Standard Governing This Motion.**

25  A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the

26  legal sufficiency of a claim.  *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Because

27  Rule 12(b)(6) focuses on the sufficiency of a claim rather than its merits, "[o]rdinarily, a court

28  may look only at the face of the complaint" in deciding a motion to dismiss.  *Van Buskirk v.*

Greenan,
Peffer,
Sallander &
Lally LLP

10

1    *Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002).  Under Rule 12(b)(6), unless it

2    appears beyond doubt that Martone and MRT can prove no set of facts in support of their claims

3    which would entitle them to relief, the motion to dismiss must be denied.  *Lewis v. Telephone*

4    *Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996).

5    **2.**      **The Senate Report on Assembly Bill 501.**

6       The California Act is the result of Assembly Bill 501 which was codified in sections

7    3426 *et seq*. of the California Civil Code.  The California Act became effective January 1, 1985.

8    Cal. Civ. Code section 3426.10.  Is purpose "is to provide 'unitary definitions of trade secret and

9    trade secret misappropriation, and a single statute of limitations for the various property, quasi-

10   contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at

11   common law."  *See American Credit Indemnity Company v. Sacks*, 213 Cal. App. 3d 622, 630

12   (1989).

13       The Report of the Senate Committee on Judiciary on Assembly Bill 501 (the "Senate

14   Report"), published on August 27, 1984 in the California Senate Journal, notes that "[i]n order to

15   indicate more fully its intent with respect to Assembly Bill 501, the Senate Committee on

16   Judiciary makes the following report."  Plaintiffs' Request for Judicial Notice ("RJN") No. 1 and

17   Exhibit 1 to the Declaration of Edward Romero in Opposition to Motion to Dismiss (the

18   "Romero Decl") at 13883.  Among other things, the Report states:

19
20         Assembly Bill 501 was introduced to effectuate the recommendation of the California
         Commission on Uniform State Laws that the Uniform Trade Secrets Act promulgated by
21         the National Conference of Commissioners on Uniform State Laws be adopted in
         California.  *Except for the new comment set out below, the comments of the national*
22         *conference with respect to the act reflect the intent of the Senate Committee on Judiciary*
         *in approving Assembly Bill 501.*

23   RJN No. 1, Romero Decl., Exhibit 1 at 13883.  (Emphasis added).  In light of the adoption by the

24   Senate Committee on Judiciary of the comments to the Uniform State Laws, it is appropriate to

25   accord substantial weight to the commissioners' comments.  *See Cadence Design Systems, Inc. v.*

26   *Avant! Corporation*, 29 Cal. 4th 215, 221 (2002)(concluding that it was appropriate to accord

27   "substantial weight" to the commissioners' comments because Cal. Civ. section 2436.6 was

28   derived almost verbatim from section 6 of the Uniform Act).

3.      **The Uniform Trade Secrets Act.**

The National Conference of Commissioners on Uniform State Laws adopted the model Uniform Trade Secrets Act (the "Uniform Act") at its annual conference in August 1979.  *See* RJN No. 2 and Exhibit 2 to the Romero Decl. at cover page.  The American Bar Association approved the Uniform Act at its meeting in Chicago, Illinois in February 1980.  *Id*.  The Commissioners' Prefatory Notes to the Uniform Act states, *inter alia*, that:

> Notwithstanding the commercial importance of state trade secret law to interstate business, this law has not developed satisfactorily.  In the first place, its development is uneven.  Although there typically are a substantial number of reported decisions in states that are commercial centers, this is not the case in less populous and more agricultural jurisdictions.  Secondly, even in states in which there has been significant litigation, there is undue uncertainty concerning the parameters of trade secret protection, and the appropriate remedies for misappropriation of a trade secret.

RJN No. 2, Romero Decl., Exhibit 2 at 1.

The Commissioners' Prefatory Note further states that "[t]he Uniform Act codifies the basic principles of common law trade secret protection, preserving its essential distinction from patent law.  RJN No. 2, Romero Decl., Exhibit 1-2.  The Commissioners' Prefatory Note goes on to say that:

> Like traditional trade secret law, the Uniform Act contains general concepts.  The contribution of the Uniform Act is substitution of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of non-contractual liability utilized at common law.  The Uniform Act also codifies the results of the better reasoned cases concerning the remedies for trade secret misappropriation.

RJN No. 2, Romero Decl., Exhibit 2 at 2.

A.      *Purpose of the Uniform Act.*

The Uniform Act is divided into twelve sections.  Section 8, entitled "Uniformity of Application and Construction," states that the Uniform Act "shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject matter of this Act among states enacting it."  RJN No. 2, Romero Decl., Exhibit 2 at 13.

B.      *Preemption of State Laws.*

Section 7 of the Uniform Act is entitled "Effect on Other Law."  It states:

> (a)  This Act displaces conflicting tort, restitutionary, and other law of this State pertaining to civil liability for misappropriation of a trade secret.

(b)  This Act does not affect:

(1)  contractual or other civil liability or relief that is not based upon misappropriation of a trade secret; or

(2)  criminal liability for misappropriation of a trade secret.

RJN No. 2, Romero Decl., Exhibit 2 at 13.  The Commissioners' Comment to section 7 states:

> *This Act is not a comprehensive remedy.*  It applies to duties imposed by law in order to protect competitively significant secret information.  *It does not apply to duties voluntarily assumed through an express or implied-in-fact contract.*  The enforceability of covenants not to disclose trade secrets and covenants not to compete that are intended to protect trade secrets for example, are governed by other law.  *The Act also does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information,* like an agent's duty of loyalty to his or her principal.

RJN No. 2, Romero Decl., Exhibit 2 at 13 (emphasis added).

**4.     California's Revisions to Section 7 of the Uniform Act.**

When California adopted its version of the Uniform Act, the Legislature omitted the language of Section 7(a) of the Uniform Act.  It also rewrote section 7(b).  These changes are codified in section 3426.7 of the Civil Code.  Entitled "Applicable Existing Statutes Not Superseded," section 3426.7 of the Civil Code provides:

> (a)  Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.
>
> (b)  This title does not affect (1) contractual remedies, whether or not based on misappropriation of a trade secret, (2) other civil remedies that are not based upon misappropriation of a trade secret, or (3) criminal remedies, whether or not based upon misappropriation of a trade secret.

Cal. Civ. Code section 3426.7(a) and (b).

**5.     The Legislative Amendments to the California Act.**

*A.      As introduced on February 7, 1983.*

As originally introduced, AB 501 proposed that section 3426.7 of the Civil Code state:

> Except as otherwise expressly provided, this title does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.

RJN 3, Romero Decl., Exhibit 3 at 4.

  **B.**   *As Amended in Assembly April 21, 1983.*

  The Legislature amended AB 501 to add section 3426.8 to state *"[t]his title does not affect any contractual rights or remedies.*  RJN 4, Romero Decl., Exhibit 4 at 4.  In its report for the April 21, 1983 amendment, the Assembly Committee on Judiciary states that the bill would:

> provide that the Act does not affect any contractual rights or remedies and that, except as otherwise expressly provided, it does not supersede any statute relating to misappropriation of a trade secret or otherwise regulations [sic] trade secrets.

RJN 5, Romero Decl., Exhibit 5 at 2.  The staff comments to the report further provides:

> 2.  Existing California statutory law contains a number of other provisions which define or otherwise affect trade secrets.  For example, Penal Code section 499c provides for criminal penalties for misappropriation of trade secrets.  This bill, which provides for civil remedies, *is generally not intended to affect any of the existing provisions*.  It states that, except as otherwise expressly provided, it does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.

*Id*. at 3 (emphasis added).  A second assembly report for April 21, 1983 was also prepared based based on amendments proposed by the Senate.  RJN 6, Romero Decl., Exhibit 6.  The staff comments remained unchanged notwithstanding the proposed amendments.  *Id*. at 3.

  **C. As Amended in the Assembly on May 3, 1983.**

  The May 1983 amendments divided section 3426.7 into subsections (a) and b.  Section 3426.7(b) was proposed to state:

> (b)  This title does not affect the disclosure of a public record by a state or local agency under the California Public Records Act (Chapter 3.5 (commencing with Section 6250) Division 7 of Title 1 of the Government Code).  Any determination as to whether the disclosure of a public record constitutes a misappropriation of a trade secret and the rights and remedies with respect thereto shall be made pursuant to the law in effect before the operative date of this title.

RJN 7, Romero Decl., Exhibit 7 at 4.

  **D. As Amended in Senate July 6, 1984.**

  The Senate Committee on Judiciary report for the July 6 amendments state that:

> (b)  <u>No effect on existing statutes or contracts</u>.

> AB 501 would provide that the Act would not affect any contractual rights or remedies and that, expect as otherwise expressly provided, it would not supersede any statute relating to the misappropriation of a trade secret.

RJN 8, Romero Decl., Exhibit 9 at 8-9.

1        **E.**    *As amended in Senate August 15, 1984.*

2        The language used in the current version of Cal. Civ. Code section 3426.7(a) and (b) was

3    proposed in August 984.  *See* RJN 11, Romero Decl., Exhibit 11 at 4.  In the Concurrence in

4    Senate Amendments for Assembly Bill 501, the Assembly Office of Research notes that the

5    Senate amendments would not affect "(b) other civil remedies."  RJN 12 at 2.

6    **6.**    **Plaintiffs' Claim for Fraud and Deceit Is Not Preempted and is Alleged With the**
          **Specificity Required by Rule 9 of the Federal Rules of Civil Procedure.**

7

8        The motion to dismiss the claim for fraud and deceit is properly denied.  This claim is

9    asserted against Burgess and Kestrel and arises from three distinct bases: defendants' (i) intent to

10   defraud plaintiffs in violation of the Computer Fraud and Abuse Act (Complaint, ¶95); and their

11   promises and representations to (ii) protect the trade secrets and intellectual property of Martone

12   and MRT and (iii) bill plaintiffs only for the services provided by Burgess.  Complaint, ¶119.

13   None of the bases for plaintiffs' claims are preempted by the California Act.  The first basis for

14   this claim arises from the Computer Fraud and Abuse Act, not the California Act.  As such, there

15   is no preemption because the fraud is not based on the misappropriation of trade secrets.

16   Likewise, defendants acknowledge that the third basis for this claim does not implicate the

17   California Act and is therefore not preempted.

18       The second basis for this claim arises from the promises and representations in the

19   Agreement to protect both the trade secrets and other intellectual property of Martone and MRT.

20   The Agreement, however, does not distinguish between trade secrets and other forms of tangible

21   and intangible property rights constituting "Proprietary Information."  Instead, paragraph 2 of the

22   Agreement lumps all forms of property rights under the term "Proprietary Information" without

23   any attempt to distinguish whether such property rights constitute a trade secret or some other

24   form of property interest.  Moreover, the Agreement expressly recognizes that only a portion of

25   the property interests that are subject to the Agreement will constitute "Proprietary Information."

26   *See* Complaint, Exhibit 1, ¶1.  Furthermore, Paragraph 2(a)-(i) of the Agreement provides a

27   mechanism by which a laundry list of tangible and intangible property rights can be excluded

28   from the term "Proprietary Information."  The complaint, however, does not allege whether any

Greenan,
Peffer,
Sallander &
Lally LLP

15

such property rights have been excluded from the term "Proprietary Information." Nor is there any method to determine at the pleading stage what Proprietary Information constitutes "trade secrets" or other property interests protected by other California laws. As to the latter, there is no preemption. Accordingly, it does not appear beyond doubt that Plaintiffs can prove no set of facts in support of their claim for fraud and deceit which would entitle them to such relief. As a result, the motion to dismiss this claim is properly denied.

The assertion that Plaintiffs have not alleged their claim for fraudulent billing with the specificity required by Rule 9(b) is also without merit. The allegations supporting this claim are set forth in paragraphs 23-31 and 79-83 of the Complaint. Among other things, Burgess is alleged to have been retained by plaintiffs to develop software and to have executed the Agreement before beginning his work. Complaint, ¶¶23-31. Moreover, Plaintiffs assert that no consultant other than Burgess was authorized to either review their intellectual property or create the software. Complaint, ¶81. Furthermore, Burgess agreed that all proprietary information sent to him by plaintiffs would be received only by him. *Id.* ¶80. Notwithstanding these promises and representations, the MRT computers used by Burgess and the computer discs returned by him to plaintiffs revealed that Burgess and Kestrel used software consultants other than Burgess to review plaintiffs' intellectual property and to create the software requested by plaintiffs. Complaint, ¶79. Plaintiffs further allege that although the consultants used by defendants had less education, training and experience than Burgess, defendants nonetheless billed plaintiffs for the work performed by these inexperienced consultants at the same rate charged by Burgess and without disclosing such facts to plaintiffs. Complaint, ¶83.

The particularity requirement of Rule 9(b) serves numerous functions. Among them is ensuring that Burgess and Kestrel have sufficient information to formulate a defense by providing adequate notice of both the nature and grounds for the claim of fraud and deceit. *See Concha v. London*, 62 F.3d 1493, 1502-1503 (9th Cir. 1995); *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999). Rule 9(b) also serves the purpose of requiring Martone and MRT to conduct a pre-complaint investigation in sufficient depth to assure that the charge of fraud is responsible and supported, rather than defamatory and

1   extortionate. *See Ackerman v. Northwestern Mutual Life Insurance Company*, 172 F.3d 467, 469

2   (7th Cir. 1999). The requirements of Rule 9(b), however, must be read in harmony with those of

3   Rule 8 requiring a short and plain statement of the claim. *See Sanderson v. HCA-the Healthcare*

4   *Co.*, 447 F.3d 873, 876 (6th Cir. 2006). Thus, the particularity requirement is satisfied if the

5   pleading "identifies the circumstances constituting fraud (or mistake) so that the defendant can

6   prepare an adequate answer from the allegations." *Moore v. Kayport Package Express, Inc.*, 885

7   F.2d 531, 540 (9th Cir. 1989). The allegations of fraudulent billing by Burgess and Kestrel meet

8   this test.

9        Specifically, the complaint sets forth in detail the promises and representations of

10   Burgess and Kestrel and the circumstances surrounding the fraudulent billing of plaintiffs. The

11   allegations provide defendants with the circumstances constituting the fraud and deceit in

12   sufficient detail to permit them to answer the allegations. Moreover, the circumstances

13   surrounding the fraudulent billing of Martone is uniquely, if not exclusively, within defendants'

14   control. As such, Rule 9(b) may be satisfied by merely alleging that the necessary information

15   lies within the exclusive control of Burgess and Kestrel. *See Shapiro v. UJB Financial*

16   *Corporation*, 964 F.2d 272, 285 (3rd Cir. 1982). Accordingly, Martone and MRT respectfully

17   request that defendants' motion to dismiss the Fourth Claim for Relief be denied in its entirety.

18   **7.**     **The Motion to Dismiss the Claim for Breach of the Implied Covenant of Good Faith**
19           **and Fair Dealing is Properly Denied.**

20        The assertion that the claim for breach of the covenant of good faith and fair dealing

21   should be dismissed because it fails to state an independent basis for relief other than for breach

22   of contract is nonsense. It is well-recognized in California that there is implied in every contract

23   a covenant by each party not to do anything which will deprive the other party of the benefits of

24   the contract. This covenant not only imposes upon each contracting party the duty to refrain

25   from doing anything which would render performance of the contract impossible by any act of

26   his own, but also the duty to do everything that the contract presupposes that he will do to

27   accomplish its purpose. *See Harm v. Frasher*, 181 Cal. App. 2d 405, 417 (1960); *McClain v.*

28   *Octagon Plaza, LLC*, 159 Cal. App. 4th 784, 806 (2008). The prerequisite for any action for

breach of this covenant is the existence of a contractual relationship between the parties, because the covenant is an implied term in the contract. *Smith v. San Francisco*, 225 Cal. App. 3d 38, 49 (1990).

Defendants do not dispute that a contract between them and Plaintiffs has properly been alleged. Nor do Defendants dispute that Plaintiffs have properly alleged a claim for breach of the covenant of good faith and fair dealing that is implied in the contract. Moreover, Defendants fail to cite any authority whatsoever for their assertion that dismissal of this claim is warranted because it states no basis for relief that is distinct from a claim for breach of contract. Indeed a long line of California authorities holds that the claim for breach of the implied covenant is distinct from a claim for breach of contract. *See* 1 Witkin, Summary of California Law (10th ed.), Contracts, section 798, Nature of Covenant (2005). As such, there is no legal or factual basis for Defendants to seek dismissal of the Sixth Claim for Relief.

Additionally, Plaintiffs note that they have not alleged that their Sixth Claim for Relief is based on a contract of insurance or on a relationship giving rise to a claim for tortious breach of the implied covenant of good faith and fair dealing. As such, the assertion that a claim for tortious breach of the implied covenant is preempted by the California Act is not ripe and is properly denied on that ground.

**8.    Plaintiffs' Claim for Unjust Enrichment is Not Preempted.**

The assertion that the Eighth Cause of Action is preempted by the California Act is also without merit. To the extent this claim is based upon the misappropriation of plaintiffs' trade secrets, the claim is expressly authorized by Civil Code section 3426.3(a)("[a] complainant may also recover for unjust enrichment caused by misappropriation . . . .").

Moreover, unjust enrichment is a form of restitution, which is a contractual remedy. *See Ajaxo Inc. v. E*Trade Group, Inc.*, 135 Cal. App. 4th 21, 56 (2005), rehearing and review denied (2006); *Nordberg v. Trilegiant Corporation*, 445 F. Supp. 2d 1082, 1100-1101 (N.D. Cal. 2006)(citing 1 Witkin, Contracts, (10th ed.), section 1013 for the proposition that the right to restitution or quasi-contractual recovery is based upon unjust enrichment). Contractual remedies are not preempted by the California Act. Cal. Civ. Code section 3426.7(b).

1    Like a claim for breach of the implied covenant of good faith and fair dealing, California

2    law authorizes a private right of action for unjust enrichment.  As the California Court of Appeal

3    set forth in *Ajaxo Inc. v. E\*Trade Group, Inc.*:

4       [i]n this case, we must draw the distinction between damages and restitution.  When the
        remedy given for breach of contract is money damages, the amount awarded is

5       determined with the purpose of putting the injured party in as good a position as he would
        have occupied been had the contract been performed.  In granting restitution as a remedy

6       for the breach, however, the purpose to be attained may be no more than the restoration
        of the injured party to as good a position as that occupied by him before the contract was

7       made.

8    *Ajaxo, supra*, 135 Cal. App. 4th at 56.

9    Not only is unjust enrichment a contractual remedy, California law makes clear that a

10   private cause of action exists for this claim.  *See Ghirardo et al. v. Antonioli, et al.*, 14 Cal. 4th

11   39, 50-54 (1996)(remanding action with instruction that judgment be entered for appellant after

12   finding that his claim for unjust enrichment had been pled and proved under traditional equitable

13   principles notwithstanding respondents' contention that the claim was not authorized by statute).

14   S*ee also Peterson v. Cellco Partnership*, 2008 WL 2536073 at 6 (June 26, 2008)(affirming

15   demurrer to claim for unjust enrichment because of appellants' failure to allege damage as an

16   element of their claim); *Hirsch v. Bank of America*, 107 Cal. App. 4th 708, 712, 722

17   (2003)(holding that a cause of action for unjust enrichment survived demurrer).

18   Some federal courts acknowledge that a private right of action for unjust enrichment

19   exists under California law.  *See Nordberg v. Trilegiant Corporation*, 445 F.Supp. 2d 1082,

20   1100-1101 (N.D. Cal. 2006)(denying motion to dismiss claim for unjust enrichment because it is

21   a form of restitution which may be asserted as a private right of action under California law).

22   Other federal courts recognize a private right of action when the claim is based on rights arising

23   from other law.  *See Walker v. USSA Casualty Insurance Company*, 474 F. Supp. 2d 1168, 1174

24   (E.D. Cal. 2007)(citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723 (2000) (claim for unjust

25   enrichment recognized based upon wrongful dishonor of a credit letter)); *Weststeyn Dairy 2 v.*

26   *Eades Commodities Co.*, 280 F. Supp. 2d 1044, 1075 (E.D. Cal. 2003)(claim for unjust

27   enrichment claim recognized based upon an alleged trust and contractual rights)).

28

Greenan,
Peffer,
Sallander &
Lally LLP

19

Here, Plaintiffs' claim for unjust enrichment is expressly authorized by Cal. Civ. Code section 3426.3(a) and is therefore cognizable as either an express private right of action or as a claim arising from other law. Accordingly, Plaintiffs respectfully request that the motion to dismiss the Eighth Claim for Relief for unjust enrichment be denied.

**9.    Plaintiffs' Claim for Injunctive Relief is not Preempted.**

The motion to dismiss the tenth claim for injunctive relief is properly denied for the same reasons as set forth above. Injunctive relief is expressly authorized under the Computer Fraud and Abuse Act, 18 U.S.C. section 1030(g). Injunctive relief is also expressly authorized by the California Act, Cal. Civ. Code section 3426.2. Moreover, because Plaintiffs' claim under the Computer Fraud and Abuse Act and California claims that are not based on trade secret misappropriation are not preempted by the Act, injunctive relief under both federal and state law is available to Plaintiffs. Accordingly, Martone and MRT respectfully request that the motion to dismiss the Tenth Cause of Action be denied.

**10.   The California Act Does not Preempt Claims Under the Unfair Competition Law.**

California law permits claims under the Unfair Competition Law that are unfair, fraudulent or unlawful. Cal. Bus. & Profs. Code section 17200. Claims based on the unlawful prong of section 17200 can arise from the violation of federal or state law. *See Diaz v. Kay-Dix Ranch*, 9 Cal. App. 3d 588, 591 (1970) (practices that violate federal laws may be redressed under section 17200). As set forth in detail above, the claims asserted by Plaintiffs arise from violation of the Computer Fraud and Abuse Act.

Plaintiffs state law claims under section 17200 are also proper. As noted above, the complaint alleges that defendants misappropriated both their trade secrets and other tangible and intangible property interests that are subject to laws other than the California Act. As a result, these claims are not based on trade secret misappropriation and can properly serve as the predicate acts for liability under Business and Professions Code section 17200 *et seq*. Accordingly, Martone and MRT respectfully request that the motion to dismiss the Seventh Cause of Action for violation of the Unfair Competition Law be denied.

1    As set forth above, the complaint alleges that defendants misappropriated both their trade secrets

2    and other tangible and intangible property interests that are subject to laws other than the

3    California Act.

4    **11.        Preemption Under the California Act is Not Ripe for Adjudication by This Motion.**

5            Denial of this motion is further warranted because the nature of the claims asserted in this

6    action, and the allegations supporting them, cannot be determined on a motion to dismiss.  As

7    such, the assertion of preemption under the California Act is not ripe for adjudication.  In

8    *Callaway Golf Company v. Dunlop Slazenger Group, Americas, Inc.*, 318 F.Supp. 2d 216 (D.

9    Del. 2004), the district court noted the appropriateness of alleging alternative theories of liability

10   for trade secrets misappropriation at the pleading stage.  *Id.* at 218.  This was especially so

11   because "it had not been established that the information at issue may be classified as trade

12   secrets."  *Id.*  As the court noted, "at [the pleading stage], the status of the information is merely

13   a matter of allegation . . . ."  The opinion further notes that "until it is shown that the information

14   is entitled to trade secret protection, it is premature to rule on whether Dunlop's claims of

15   conversion, unjust enrichment, patent title and negligence are preempted" by the California Act.

16   *Id* at 218.

17          *Callaway Golf* was cited by the district court in *Ali v. Fasteners for Retail, Inc.*, 544 F.

18   Supp. 2d 1064 (E.D. Cal. 2008) which also concluded that it was premature to determine on a

19   motion to dismiss whether the California Act preempted the plaintiff's state law claims.  *Ali,*

20   *supra* at 1070-1072.  As the *Ali* court noted "[t]he court finds that, at this point, it is still unclear

21   how much of the allegedly misappropriated information was a trade secret.  Therefore, it would

22   be premature to hold that [the California Act] preempts Plaintiff's conversion claim."  *Ali v.*

23   *Fasteners for Retail, Inc.*, 544 F.Supp. 2d at 1072.  Moreover, the *Ali* court noted that:

24          Plaintiff has alleged sufficient facts for establishing a right to intangible property that
            forms the basis of a conversion claim.  First, like the domain name in *Kremen*, the
25          information allegedly converted are well defined interests.  *The source codes, cost data*
            *and part numbers are not amorphous.  They are distinct groupings of proprietary*
26          *information.*

27   *Ali v. Fasteners for Retail, Inc.*, 544 F. Supp. 2d at 1072 (citing *G.S. Rasmussen & Assoc., Inc. v.*

28   *Kalitta Flying Services, Inc.*, 958 F.2d 896, 903 (9th Cir. 1992)(emphasis added).

The rationale of *Ali* and *Callaway Golf* apply here.  The Agreement does not distinguish between Proprietary Information that constitutes a trade secret and those that are subject to other property interests that are subject to laws other than the California Act.  Indeed, the complaint in this case alleges the theft of a myriad of Plaintiffs' tangible and intangible property interests such as source codes, computer files, software, algorithms, graphical user interfaces, databases, and other intellectual property.  Complaint, ¶70.  Such property constitutes distinct groups of proprietary information which may or may not constitute trade secrets but which would be subject to the protection of California laws if they are found not to be trade secrets.  Indeed, defendants will likely assert either in their answers, or in dispositive motions, that some or all of the allegedly misappropriated property interests are not trade secrets.

To therefore determine at this stage of the case that Plaintiffs' state law claims are preempted based on nothing more than defendants' characterization of the complaint would work an injustice to Martone and MRT should defendants later contend that Plaintiffs' trade secrets are not trade secrets but rather property interests that are subject to the very claims dismissed at the pleading stage.

### CONCLUSION

This motion is a disingenuous attempt to shield Defendants for the harm they have cause to Mr. Martone and his nascent company.  None of the claims for relief asserted in this action are preempted by the California Act because each claim is based on conduct that is separate and distinct from a claim for trade secrets misappropriation.  Moreover, the Agreement entered into by the parties to this action does not identify the "proprietary information" comprising trade secrets or some other tangible or intangible property interests subject to California law other than the California Act.  As a result, Mr. Martone and MRT respectfully request that this motion be denied in its entirety.  Mr. Martone and MRT alternatively request that they be given leave to amend the complaint should the California Act be deem to conflict with their claims for relief or if such claims be deemed to require further amendment.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Dated:  August 7, 2008

GREENAN, PEFFER, SALLANDER & LALLY LLP

By: _____/S/_____

Edward Romero
Attorneys for Plaintiffs
MASSIMILIANO MARTONE and
MARTONE RADIO TECHNOLOGY, INC.