1  Kevin D. Lally (SBN 095374)
   Edward Romero (SBN 148495)
2  GREENAN, PEFFER, SALLANDER & LALLY LLP
   Post Office Box 10
3  6111 Bollinger Canyon Road, Suite 500
   San Ramon, California  94583
4  Telephone:  (925) 866-1000
   Facsimile:  (925) 830-8787
5  Email: Eromero@gpsllp.com

6  Mary McNamara (SBN 147131)
   August Gugelmann (SBN 240544)
7  SWANSON, McNAMARA & HALLER LLP
   300 Montgomery Street, Suite 1100
8  San Francisco, California  94104
   Telephone:  (415) 477-3800
9  Facsimile:  (415) 477-9010
   Email:  MMcnamara@SMHlegal.com
10
   Attorneys for Plaintiffs
11 MASSIMILIANO MARTONE and
   MARTONE RADIO TECHNOLOGY, INC.
12

13             UNITED STATES DISTRICT COURT

14         FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16 MASSIMILIANO MARTONE, an individual; )  Case No.  C-08-02379 CW
   MARTONE RADIO TECHNOLOGY, INC., a )
17 Nevada Corporation,                  )
                                        )
18          Plaintiffs,                 )  **REQUEST FOR JUDICAL NOTICE OF**
                                        )  **PLAINTIFFS MASSIMILIANO**
19     vs.                              )  **MARTONE AND MARTONE RADIO**
                                        )  **TECHNOLOGY IN OPPOSITION TO**
20 DAVID BURGESS, an individual; KESTREL )  **MOTION TO DISMISS; DECLARATION**
   SIGNAL PROCESSING, INC., a California )  **OF EDWARD ROMERO IN SUPPORT**
21 Corporation; RANGE NETWORKS, INC     )  **THEREOF**
                                        )
22          Defendants.                 )  Date:  August 28, 2008
                                        )  Time:  2:00 p.m.
23                                       )  Courtroom:  2
                                        )  [The Honorable Claudia Wilken]
24                                       )
                                        )
25 ──────────────────────────────────── )

26     Pursuant to Rule 201(b), (c) and (d) of the Federal Rules of Evidence, plaintiffs

27 Massimiliano Martone ("Martone") and Martone Radio Technology, Inc. ("MRT") request that

28 the Court take judicial notice of the materials set forth below:

Greenan,
Peffer,
Sallander &
Lally LLP

1

Plaintiffs' Request for Judicial Notice in Opposition to Motion     Case No. CV 08 2379 CW
to Dismiss; Declaration of Edward Romero in Support Thereof

1.    Volume 8, Journal of the Senate, Legislature of the State of California, 1983-1984 Regular Session, Report of Senate Committee on Judiciary on Assembly Bill 501, a true and correct copy of which is attached to the Romero Decl. as Exhibit 1.

2.    Uniform Trade Secrets Act, drafted by the National Conference of Commissioners on Uniform State Laws, Approved and Recommended for Enactment in All the States, August 3-10, 1979, with Prefatory Note and Comments, a true and correct copy of which is attached to the Romero Decl. as Exhibit 2.

3.    California Assembly Bill No. 501, as introduced by Assemblyman Elihu Harris on February 7, 1983, a true and correct copy of which is attached to the Declaration of Edward Romero in Support of Opposition to Motion to Dismiss (the "Romero Decl.") as Exhibit 3.

4.    California Assembly Bill No. 501, as amended in Assembly April 21, 1983, a true and correct copy of which is attached to the Romero Decl. as Exhibit 4.

5.    Notes, Assembly Committee on Judiciary, Elihu M. Harris, Chairman, Assembly Bill No 501, as amended April 21, 1983, a true and correct copy of which is attached to the Romero Decl. as Exhibit 5.

6.    Notes, Assembly Committee on Judiciary, Elihu M. Harris, Chairman, Assembly Bill No. 501, as amended in the California Senate, April 21, 1983, a true and correct copy of which is attached to the Romero Decl. as Exhibit 6.

7.    California Assembly Bill No. 501, as amended in Assembly May 3, 1983, a true and correct copy of which is attached to the Romero Decl. as Exhibit 7.

8.    California Assembly Bill No. 501, as amended in Senate July 6, 1984, a true and correct copy of which is attached to the Romero Decl. as Exhibit 8.

9.    Notes, Senate Committee on Judiciary, Barry Keene, Chairman, 1983-1984 Regular Session, Assembly Bill No. 501, as amended July 6, a true and correct copy of which is attached to the Romero Decl. as Exhibit 9.

10.    Notes, Senate Committee on Judiciary, Barry Keene, Chairman, 1983-1984 Regular Session, Assembly Bill No. 501, as amended July 6 (containing a tally of votes in the Senate Judiciary), a true and correct copy of which is attached to the Romero Decl. as Exhibit 10.

Greenan,
Peffer,
Sallander &
Lally LLP

Plaintiffs' Request for Judicial Notice in Opposition to Motion
to Dismiss; Declaration of Edward Romero in Support Thereof

Case No. CV 08 2379 CW

2

1       11.    California Assembly Bill No. 501, as amended in Senate August 15, 1984, a true

2  and correct copy of which is attached to the Romero Decl. as Exhibit 11.

3       12.    Concurrence in Senate Amendments, Assembly Bill No. 501, as amended August

4  15, 1984, a true and correct copy of which is attached to the Romero Decl. as Exhibit 12.

7  Dated:  August 7, 2008

8                             GREENAN, PEFFER, SALLANDER & LALLY LLP

10                    By: *Edward Romero*

11                         Edward Romero

12                         Attorneys for Plaintiffs

                                 MASSIMILIANO MARTONE and

13                         MARTONE RADIO TECHNOLOGY, INC.

Greenan,
Peffer,
Sallander &
Lally LLP

3

Plaintiffs' Request for Judicial Notice in Opposition to Motion
to Dismiss; Declaration of Edward Romero in Support Thereof        Case No. CV 08 2379 CW

1   I, Edward Romero, declare:

2   1.    I am a member of the Bar of the State of California, am admitted to practice

3   before this Court and am associated with the law firm of Greenan, Peffer, Sallander & Lally,

4   LLP, which is counsel of record to Massimiliano Martone ("Martone") and Martone Radio

5   Technology, Inc. ("MRT"), plaintiffs in this action. I have personal knowledge of the matters set

6   forth in this declaration and if called as a witness, I could and would testify truthfully to such

7   matters. I make this declaration in support of Plaintiffs' Opposition to the Motion to Dismiss of

8   defendants David Burgess, Kestrel Signal Processing, Inc. and Range Networks, Inc.

9   (collectively, "Defendants").

10   2.    A true and correct copy of Volume 8, Journal of the Senate, Legislature of the

11   State of California, 1983-1984 Regular Session, Report of Senate Committee on Judiciary on

12   Assembly Bill 501, as obtained from the Legislative Intent Service, Inc., is attached as Exhibit 1.

13   3.    A true and correct copy of Uniform Trade Secrets Act, drafted by the National

14   Conference of Commissioners on Uniform State Laws, Approved and Recommended for

15   Enactment in All the States, August 3-10, 1979, with Prefatory Note and Comments, as obtained

16   from the Legislative Intent Service, Inc., is attached as Exhibit 2.

17   4.    A true and correct copy of California Assembly Bill No. 501, as introduced by

18   Assemblyman Elihu Harris on February 7, 1983, as obtained from the Legislative Intent Service,

19   Inc., is attached as Exhibit 3.

20   5.    A true and correct copy of California Assembly Bill No. 501, as amended in

21   Assembly April 21, 1983, as obtained from the Legislative Intent Service, Inc., is attached as

22   Exhibit 4.

23   6.    A true and correct copy of Notes, Assembly Committee on Judiciary, Elihu M.

24   Harris, Chairman, Assembly Bill No 501, as amended April 21, 1983, as obtained from the

25   Legislative Intent Service, Inc., is attached as Exhibit 5.

26   7.    A true and correct copy of Notes, Assembly Committee on Judiciary, Elihu M.

27   Harris, Chairman, Assembly Bill No. 501, as amended in the California Senate, April 21, 1983,

28   as obtained from the Legislative Intent Service, Inc., is attached as Exhibit 6.

Greenan,
Peffer,
Sallander &
Lally LLP

Plaintiffs' Request for Judicial Notice in Opposition to Motion     Case No. CV 08 2379 CW
to Dismiss; Declaration of Edward Romero in Support Thereof

1      8.      A true and correct copy of California Assembly Bill No. 501, as amended in

2    Assembly May 3, 1983, as obtained from the Legislative Intent Service, Inc., is attached as

3    Exhibit 7.

4      9.      A true and correct copy of California Assembly Bill No. 501, as amended in

5    Senate July 6, 1984, as obtained from the Legislative Intent Service, Inc., is attached as Exhibit

6    8.

7      10.     A true and correct copy of Notes, Senate Committee on Judiciary, Barry Keene,

8    Chairman, 1983-1984 Regular Session, Assembly Bill No. 501, as amended July 6, as obtained

9    from the Legislative Intent Service, Inc., is attached as Exhibit 9.

10      11.     A true and correct copy of Notes, Senate Committee on Judiciary, Barry Keene,

11    Chairman, 1983-1984 Regular Session, Assembly Bill No. 501, as amended July 6 (and

12    containing a tally of votes in the Senate Judiciary), as obtained from the Legislative Intent

13    Service, Inc., is attached as Exhibit 10.

14      12.     A true and correct copy of California Assembly Bill No. 501, as amended in

15    Senate August 15, 1984, as obtained from the Legislative Intent Service, Inc., is attached as

16    Exhibit 11.

17      13.     A true and correct copy of Concurrence in Senate Amendments, Assembly Bill

18    No. 501, as amended August 15, 1984, as obtained from the Legislative Intent Service, Inc., is

19    attached as Exhibit 12.

20

21      I declare under penalty of perjury under the laws of the United States of America that the

22    foregoing is true and correct.  Executed this 7th day of August 2008 in San Ramon, California

23

24

25

26                                                 _Edward Romero_
                                                   Edward Romero
27

28

Greenan,
Peffer,
Sallander &
Lally LLP

Plaintiffs' Request for Judicial Notice in Opposition to Motion          Case No. CV 08 2379 CW
to Dismiss; Declaration of Edward Romero in Support Thereof

# EXHIBIT 1

LIS - 13

Volume 8

# Journal of the Senate

Legislature of the State of California

1983–1984 Regular Session
1983–1984 First Extraordinary Session
1983–1984 Second Extraordinary Session



HON. LEO T. McCARTHY
President of the Senate

HON. DAVID ROBERTI
President pro Tempore

DARRYL R. WHITE
Secretary of the Senate

LEGISLATIVE INTENT SERVICE

(800) 666-1917

00 83

LEGISLATIVE INTENT SERVICE    (800) 666-1917

# SENATE DAILY JOURNAL

TWO HUNDRED SIXTY-SECOND LEGISLATIVE DAY

### CALIFORNIA LEGISLATURE
1983–84 REGULAR SESSION

## IN SENATE

Senate Chamber, Sacramento
Monday, August 27, 1984

The Senate met at 8:30 a.m.
Hon. William Craven, of the 38th District, presiding.
Secretary Daryl R. White at the Desk.
Assistant Secretary David Valverde reading.

### QUORUM CALL OF THE SENATE

Senator Maddy moved a quorum call of the Senate.
Motion carried.
The President directed the Sergeant at Arms to close the doors and to bring in the absent Members.

## PROCEEDINGS UNDER QUORUM CALL OF THE SENATE

### Hon. David Roberti
President pro Tempore of the Senate, Presiding

### ROLL CALL

The roll was called and the following Senators answered to their names:

Alquist, Ayala, Beverly, Boatwright, Campbell, Carpenter, Craven, Davis, Deddeh, Dills, Doolittle, Ellis, Foran, Garamendi, Bill Greene, Leroy Greene, Hart, Johnson, Keene, Lockyer, Maddy, Marks, McCorquodale, Mello, Montoya, Nielsen, Petris, Presley, Richardson, Robbins, Roberti, Rosenthal, Royce, Russell, Seymour, Speraw, Stiern, Torres, Vuich, and Watson—40.

Quorum present.

13882                    SENATE JOURNAL                    Aug. 27, 1984

**Assembly Bill 2253**—An act to add Sections 1026.6 and 1615 to the Penal Code, and to amend Sections 702.3 and 5328.2 of the Welfare and Institutions Code, relating to insanity.

Bill read third time.

**Motion to Amend**

The amendments to AB 2253, proposed by Senator Presley, were read and adopted and the bill ordered printed and to third reading.

**Assembly Bill 3373**—An act to add Chapter 10 (commencing with Section 23500) to Division 22 of the Health and Safety Code, relating to health.

Bill read third time.

**Motion to Amend**

The amendments to AB 3373, proposed by Senator Mello, were read and adopted and the bill ordered printed and to third reading.

**Assembly Bill 3535**—An act to amend Sections 2700, 2701, and 2750 of, to add Section 2539 to, and to repeal and add Section 2702 of, the Water Code, relating to water rights.

Bill read third time.

**Motion to Amend**

The amendments to AB 3535, proposed by Senator Garamendi, were read and adopted and the bill ordered printed and to third reading.

**Assembly Bill 3619**—An act to amend Sections 653h and 653s of, and to add Sections 653u, 653v, and 653w to, the Penal Code, relating to music.

Bill read third time.

**Motion to Amend**

The amendments to AB 3619, proposed by Senator Torres, were read and adopted and the bill ordered printed and to third reading.

**Assembly Bill 3008**—An act to amend Sections 14341 and 14342 of the Business and Professions Code, and to add Section 350 to the Penal Code, relating to trademarks.

Bill read third time.

**Motion to Amend**

The amendments to AB 3008, proposed by Senator Torres, were read and adopted and the bill ordered printed and to third reading.

**Assembly Bill 2909**—An act to amend Sections 1266, 1290, 1419, 1422, 1424, and 1432 of, to add Section 1271, 1418.2, 1427.5, 1430.5, 1432.1, and 1439.5 to, and to repeal and add Article 2.5 (commencing with Section 1272) of Chapter 2 of Division 2 of, the Health and Safety Code, and to add Sections 14022.3, 141106, 141107 to the Welfare and Institutions Code, relating to health, and making an appropriation therefor.

Bill read third time.

Aug. 27, 1984                    SENATE JOURNAL                    13883

**Motion to Amend**

The amendments to AB 2909, proposed by Senator Maddy, were read and adopted and the bill ordered printed and to third reading.

**MOTIONS TO TAKE BILLS FROM THE INACTIVE FILE**

Senator Torres moved that **AB 3422** and **AB 3081** be taken from the inactive file and placed on the third reading file.

Motion carried.

Senator Doolittle moved that **AB 1716** be taken from the inactive file and placed on the third reading file.

Motion carried.

Senator Seymour moved that **AB 3873** be taken from the inactive file and placed on the third reading file.

Motion carried.

**MOTION TO PRINT IN JOURNAL**

Senator Keene moved that the following report be printed in the Journal.

Motion carried.

**REPORT OF SENATE COMMITTEE ON JUDICIARY ON ASSEMBLY BILL 501**

In order to indicate more fully its intent with respect to Assembly Bill 501, the Senate Committee on Judiciary makes the following report.

Assembly Bill 501 was introduced to effectuate the recommendation of the California Commission on Uniform State Laws that the Uniform Trade Secrets Act promulgated by the National Conference of Commissioners on Uniform State Laws be adopted in California. Except for the new comment set out below, the comments of the national conference with respect to the act reflect the intent of the Senate Committee on Judiciary in approving Assembly Bill 501.

*Section 3426.1 of the Code of Civil Procedure*

*Comment.* One of the broadly stated policies behind trade secret law is "the maintenance of standards of commercial ethics". *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974). The Restatement of Torts, Section 757, Comment (f), notes: "A complete catalogue of improper means is not possible," but Section 1(1) includes a partial listing.

Proper means include:

1. Discovery by independent invention;
2. Discovery by "reverse engineering," that is, by starting with the known product and working backward to find the method by which it was developed. The acquisition of the known product must of course, also be by a fair and honest means, such as purchase of the item on the open market for reverse engineering to be lawful;
3. Discovery under a license from the owner of the trade secret;
4. Observation of the item in public use or on public display;
5. Obtaining the trade secret from published literature.

13884     SENATE JOURNAL     Aug. 27, 1984

Improper means could include otherwise lawful conduct which is improper under the circumstances; e.g., an airplane overflight used as aerial reconnaissance to determine the competitor's plant layout during construction of the plant. E.I. du Pont de Nemours & Co., Inc. v. Christopher, 431 F2d 1012 (CA 5, 1970), cert. den. 400 U.S. 1024 (1970). Because the trade secret can be destroyed through public knowledge, the unauthorized disclosure of a trade secret is also a misappropriation.

The type of accident or mistake that can result in a misappropriation under Section 1(2)(ii)(C) involves conduct by a person seeking relief that does not constitute a failure of efforts that are reasonable under the circumstances to maintain its secrecy under Section 1(4)(ii).

The definition of "trade secret" contains a reasonable departure from the Restatement of Torts (First) definition which required that a trade secret be "continuously used in one's business." The broader definition in the proposed Act extends protection to a plaintiff who has not yet had an opportunity or acquired the means to put a trade secret to use. The definition includes information that has commercial value from a negative viewpoint, for example the results of lengthy and expensive research which proves that a certain process will not work could be of great value to a competitor. Cf. Telex Corp. v. IBM Corp., 510 F.2d 894 (CA 10, 1975) per curiam, cert. dismissed 423 U.S. 802 (1975) (liability imposed for development cost savings with respect to product not marketed). Because a trade secret need not be exclusive to confer a competitive advantage, different independent developers can acquire rights in the same trade secret.

The words "method, technique" are intended to include the concept of "know-how."

The language "not being generally known to the public or to other persons" does not require that information be generally known to the public for trade secret rights to be lost. If the principal person who can obtain economic benefit from information is aware of it, there is no trade secret. A method of casting metal, for example, may be unknown to the general public but readily known within the foundry industry.

The phrase "and not being readily ascertainable by proper means" was included in this section as originally proposed by the National Conference of Commissioners on Uniform State Laws. It was removed from the section in favor of the phrase "the public or persons who can obtain economic benefit from its disclosure" because the original language was viewed as ambiguous in the definition of a trade secret. However, the assertion that a matter is readily ascertainable by proper means remains available as a defense to a claim of misappropriation.

Information is readily ascertainable if it is available in trade journals, reference books, or published materials. Often, the nature of a product lends itself to being readily copied as soon as it is available on the market. On the other hand, if reverse engineering is lengthy and expensive, a person who discovers the trade secret through reverse engineering can have a trade secret in the information obtained from reverse engineering.

Aug. 27, 1984     SENATE JOURNAL     13885

Finally, reasonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on "need to know basis," and controlling plant access. On the other hand, public disclosure of information through display, trade journal publications, advertising, or other carelessness can preclude protection.

The efforts required to maintain secrecy are those "reasonable under the circumstances." The courts do not require that extreme and unduly expensive procedures be taken to protect trade secrets against flagrant industrial espionage. See E.I. du Pont de Nemours & Co., Inc. v. Christopher, supra. It follows that reasonable use of a trade secret including controlled disclosure to employees and licensees is consistent with the requirement of relative secrecy.

### REQUEST FOR UNANIMOUS CONSENT (AB 4006)

Senator Keene asked for, and was granted, unanimous consent to rescind the action whereby AB 4006 was passed to the Assembly.

Bill ordered returned to third reading.

### CONSIDERATION OF DAILY FILE (RESUMED)

### MOTIONS TO TAKE BILLS FROM THE INACTIVE FILE

Senator Deddeh moved that AB 3826 be taken from the inactive file and placed on the third reading file.

Motion carried.

Senator Leroy Greene moved that AB 2635 be taken from the inactive file and placed on the third reading file.

Motion carried.

### MESSAGES FROM THE ASSEMBLY

Sacramento, August 27, 1984

Hon. Darryl White, Secretary of the Senate

Dear Darryl: The Assembly on this day suspended Joint Rule 28.1 as it pertains to AB 2185 and respectfully requests the Senate to do the same.

Sincerely,

JAMES D. DRISCOLL, Chief Clerk

### MOTION TO SUSPEND JOINT RULE 28.1

Senator Nielsen moved to suspend Joint Rule 28.1 as it pertains to AB 2185.

#### Roll Call

The roll was called and the motion carried by the following vote:

AYES (40)—Senators Alquist, Ayala, Beverly, Boatwright, Campbell, Carpenter, Craven, Davis, Deddeh, Dills, Doolittle, Ellis, Foran, Garamendi, Bill Greene, Leroy Greene, Hart, Johnson, Keene, Lockyer, Maddy, Marks, McCorquodale, Mello, Montoya, Nielsen, Petris, Presley, Richardson, Robbins, Roberti, Rosenthal, Royce, Russell, Seymour, Speraw, Stern, Torres, Vuich, and Watson.

NOES (0)—None.



# EXHIBIT 2

AB 501

# UNIFORM TRADE SECRETS ACT

*Drafted by the*

NATIONAL CONFERENCE OF COMMISSIONERS
ON UNIFORM STATE LAWS

*and by it*

Approved and Recommended for Enactment
in All the States

*at its*

ANNUAL CONFERENCE
MEETING IN ITS EIGHTY-EIGHTH YEAR
IN SAN DIEGO, CALIFORNIA
AUGUST 3-10, 1979

With Prefatory Note and Comments
_____

Approved by the American Bar Association at its meeting in
Chicago, Illinois February 4-5, 1980.

LIS - 14b

The Committee which acted for the National Conference of Commissioners on Uniform State Laws in preparing the Uniform Trade Secrets Act was as follows:

Lindsey Cowen, Case Western Reserve University, School of Law, Cleveland, OH 44106, *Chairman*

Thomas E. Cavendish, 37 West Broad Street, Columbus, OH 43215

Robert H. Cornell, 25th Floor, 50 California Street, San Francisco, CA 94104

Richard Cosway, University of Washington, School of Law, Seattle, WA 98105

Richard E. Day, University of South Carolina, School of Law, Columbia, SC 29208

Richard F. Dole, Jr., University of Houston, College of Law, 4800 Calhoun, Houston, TX 77004

James A. Showers, 62 West Elm Street, Hillsboro, TX 76645

George C. Keely, 1600 Colorado National Building, 950 Seventeenth Street, Denver, CO 80202, *President, Ex Officio*

John C. Deacon, P.O. Box 1245, Jonesboro, AR 72401, *Chairman, Executive Committee, Ex Officio*

William J. Pierce, University of Michigan, School of Law, Ann Arbor, MI 48109, *Executive Director, Ex Officio*

Allan D. Vestal, University of Iowa, College of Law, Iowa City, IA 52242, *Chairman, Division B, Ex Officio*

### Review Committee

Maurice A. Hartnett, III, Chambers, Court of Chancery, 45 The Green, Dover, DE 19901, *Chairman*

Lionel H. Frankel, The University of Utah, College of Law, Salt Lake City, UT 84112

Stanley Plettman, 4th Floor, Beaumont Savings & Loan Building, Beaumont, TX 77701

NATIONAL CONFERENCE OF COMMISSIONERS
ON UNIFORM STATE LAWS
645 North Michigan Avenue
Chicago, Illinois 60611

# UNIFORM TRADE SECRETS ACT

### Commissioner' Prefatory Note

A valid patent provides a legal monopoly for seventeen years in exchange for public disclosure of an invention. If, however, the courts ultimately decide that the Patent Office improperly issued a patent, an invention will have been disclosed to competitors with no corresponding benefit. In view of the substantial number of patents that are invalidated by the courts, many businesses now elect to protect commercially valuable information through reliance upon the state law of trade secret protection. *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974), which establishes that, neither the Patent Clause of the United States Constitution nor the federal patent laws pre-empt state trade secret protection for patentable or unpatentable information, may well have increased the extent of this reliance.

The recent decision in *Aronson v. Quick Point Pencil Co.*, 99 S.Ct. 1096, 201 USPQ 1 (1979) reaffirmed *Kewanee* and held that federal patent law is not a barrier to a contract in which someone agrees to pay a continuing royalty in exchange for the disclosure of trade secrets concerning a product.

Notwithstanding the commercial importance of state trade secret law to interstate business, this law has not developed satisfactorily. In the first place, its development is uneven. Although there typically are a substantial number of reported decisions in states that are commercial centers, this is not the case in less populous and more agricultural jurisdictions. Secondly, even in states in which there has been significant litigation, there is undue uncertainty concerning the parameters of trade secret protection, and the appropriate remedies for misappropriation of a trade secret. One commentator observed:

> "Under technological and economic pressures, industry continues to rely on trade secret protection despite the doubtful and confused status of both common law and statutory remedies. Clear, uniform trade secret protection is urgently needed. . . ."
> Comment. "Theft of Trade Secrets: The Need for a Statutory Solution", 120 U.Pa.L.Rev. 378, 380-81 (1971).

In spite of this need, the most widely accepted rules of trade secret law, § 757 of the Restatement of Torts, were among the sections omitted from the Restatement of Torts, 2d (1978).

The Uniform Act codifies the basic principles of common law trade secret protection, preserving its essential distinctions from patent law.

1

## TRADE SECRETS ACT

Under both the Act and common law principles, for example, more than one person can be entitled to trade secret protection with respect to the same information, and analysis involving the "reverse engineering" of a lawfully obtained product in order to discover a trade secret is permissible. *Compare* Uniform Act, section 1(2) (misappropriation means acquisition of a trade secret by means that should be known to be improper and unauthorized disclosure or use of information that one should know is the trade secret of another) *with Miller v. Owens-Illinois, Inc.*, 187 USPQ 47, 48 (D.Md.1975) (alternative holding) (prior, independent discovery a complete defense to liability for misappropriation) *and Wesley-Jessen, Inc., v. Reynolds*, 182 USPQ 135, 144–45, (N.D.Ill.1974) (alternative holding) (unrestricted sale and lease of camera that could be reversed engineered in several days to reveal alleged trade secrets preclude relief for misappropriation).

For liability to exist under this Act, a section 1(4) trade secret must exist and either a person's acquisition of the trade secret, disclosure of the trade secret to others, or use of the trade secret must be improper under section 1(2). The mere copying of an unpatented item is not actionable.

Like traditional trade secret law, the Uniform Act contains general concepts. The contribution of the Uniform Act is substitution of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law. The Uniform Act also codifies the results of the better reasoned cases concerning the remedies for trade secret misappropriation.

### The History of the Special Committee
### on the Uniform Trade Secrets Act

On February 17, 1968, the Conference's subcommittee on Scope and Program reported to the Conference's Executive Committee as follows:

"14. Uniform Trade Secrets Protection Act.

This matter came to the subcommittee from the Patent Law Section of the American Bar Association from President Pierce, Commissioner Joiner and Allison Dunham. It appears that in 1966 the Patent Section of the American Bar Association extensively discussed a resolution to the effect that 'the ABA favors the enactment of a uniform state law to protect against the wrongful disclosure or wrongful appropriation of trade secrets, know-how or other information maintained in confidence by another.' It was decided, however, not to put such a resolution to a vote at that time but that the appropriate Patent Section Committee would further consider the problem. In determining what would be appropriate for the

2

# TRADE SECRETS ACT

Conference to do at this juncture, the following points should be considered:

(1) At the present much is going on by way of statutory development, both federally and in the states.

(2) There is a fundamental policy conflict still unresolved in that the current state statutes that protect trade secrets tend to keep innovations secret, while our federal patent policy is generally designed to encourage public disclosure of innovations. It may be possible to devise a sensible compromise between these two basic policies that will work, but to do so demands coordination of the statutory reform efforts of both the federal government and the states.

(3) The Section on Patents, the ABA group that is closest to this problem, is not yet ready to take a definite position.

It is recommended that a special committee be appointed to investigate the question of the drafting of a uniform act relating to trade secret protection and to establish liaison with the Patent Law Section, the Corporation, Banking and Business Law Section, and the Antitrust Law Section of the American Bar Association."

The Executive Committee, at its Midyear Meeting held February 17 and 18, 1968, in Chicago, Illinois, "voted to authorize the appointment of a Special Committee on Uniform Trade Secrets Protection Act to investigate the question of drafting an act on the subject with instructions to establish liaison with the Patent Law Section, the Corporation, Banking and Business Law Section, and the Antitrust Law Section of the American Bar Association." Pursuant to that action, a Special Committee was appointed, which included Professor Richard Cosway of Seattle, Washington, who is the only original Committee member to serve to the present day. The following year saw substantial changes in the membership of the Committee. Professor Richard F. Dole, Jr., of Iowa City, Iowa, became a member then and has served as a member ever since.

The work of the Committee went before the Conference first on Thursday afternoon, August 10, 1972, when it was one of three Acts considered on first reading. Thereafter, for a variety of reasons, the Committee became inactive, and, regrettably, its original Chairman died on December 7, 1974. In 1976, the Committee became active again and presented a Fifth Tentative Draft of its proposed bill at the 1978 Annual Meeting of the National Conference of Commissioners on Uniform State Laws.

Despite the fact that there had previously been a first reading, the Committee was of the opinion that, because of the lapse of time, the 1978 presentation should also be considered a first reading. The Con-

3

TRADE SECRETS ACT

ference concurred, and the bill was proposed for final reading and adoption at the 1979 Annual Meeting.

On August 9, 1979, the Act was approved and recommended for enactment in all the states.

## UNIFORM TRADE SECRETS ACT

Sec.
1. Definitions.
2. Injunctive Relief.
3. Damages.
4. Attorney's Fees.
5. Preservation of Secrecy.
6. Statute of Limitations.
7. Effect on Other Law.
8. Uniformity of Application and Construction.
9. Short Title.
10. Severability.
11. Time of Taking Effect.
12. Repeal.

*Be it enacted* .......

## § 1.   [Definitions]

As used in this Act, unless the context requires otherwise:

(1) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means;

(2) "Misappropriation" means:

(i) acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(ii) disclosure or use of a trade secret of another without express or implied consent by a person who

(A) used improper means to acquire knowledge of the trade secret; or

(B) at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was

(I) derived from or through a person who had utilized improper means to acquire it;

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

4

(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) before a material change of his position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

(3) "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

(4) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(i) derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and

(ii) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

### Commissioners' Comment

One of the broadly stated policies behind trade secret law is "the maintenance of standards of commercial ethics." *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470 (1974). The Restatement of Torts, Section 757, Comment (f), notes: "A complete catalogue of improper means is not possible," but Section 1(1) includes a partial listing.

Proper means include:

1. Discovery by independent invention;

2. Discovery by "reverse engineering", that is, by starting with the known product and working backward to find the method by which it was developed. The acquisition of the known product must of course, also be by a fair and honest means, such as pur-

chase of the item on the open market for reverse engineering to be lawful;

3. Discovery under a license from the owner of the trade secret;

4. Observation of the item in public use or on public display;

5. Obtaining the trade secret from published literature.

Improper means could include otherwise lawful conduct which is improper under the circumstances; *e. g.*, an airplane overflight used as aerial reconnaissance to determine the competitor's plant layout during construction of the plant. *E. I. du Pont de Nemours & Co., Inc. v. Christopher*, 431 F.2d 1012 (CA 5, 1970), cert. den. 400 U.S. 1024 (1970). Because the trade secret can be de-

5

## TRADE SECRETS ACT

stroyed through public knowledge, the unauthorized disclosure of a trade secret is also a misappropriation.

The type of accident or mistake that can result in a misappropriation under Section 1(2)(ii)(C) involves conduct by a person seeking relief that does not constitute a failure of efforts that are reasonable under the circumstances to maintain its secrecy under Section 1(4)(ii).

The definition of "trade secret" contains a reasonable departure from the Restatement of Torts (First) definition which required that a trade secret be "continuously used in one's business." The broader definition in the proposed Act extends protection to a plaintiff who has not yet had an opportunity or acquired the means to put a trade secret to use. The definition includes information that has commercial value from a negative viewpoint, for example the results of lengthy and expensive research which proves that a certain process will *not* work could be of great value to a competitor.

*Cf. Telex Corp. v. IBM Corp.,* 510 F.2d 894 (CA 10, 1975) per curiam, cert. dismissed 423 U.S. 802 (1975) (liability imposed for developmental cost savings with respect to product not marketed). Because a trade secret need not be exclusive to confer a competitive advantage, different independent developers can acquire rights in the same trade secret.

The words "method, technique" are intended to include the concept of "know-how."

The language "not being generally known to and not being readily ascertainable by proper means by other persons" does not require that information be generally known to the public for trade secret rights to be lost. If the principal person who can obtain economic benefit from information is aware of it, there is no trade secret. A method of casting metal, for example, may be unknown to the general public but readily known within the foundry industry.

Information is readily ascertainable if it is available in trade journals, reference books, or published materials. Often, the nature of a product lends itself to being readily copied as soon as it is available on the market. On the other hand, if reverse engineering is lengthy and expensive, a person who discovers the trade secret through reverse engineering can have a trade secret in the information obtained from reverse engineering.

Finally, reasonable efforts to maintain secrecy have been held to include advising employees of the existence of a trade secret, limiting access to a trade secret on "need to know basis", and controlling plant access. On the other hand, public disclosure of information through display, trade journal publications, advertising, or other carelessness can preclude protection.

The efforts required to maintain secrecy are those "reasonable under the circumstances." The courts do not require that extreme and unduly expensive procedures be taken to protect trade

6

Case 4:08-cr-02379-CW   Document 13   Filed 06/07/2008   Page 20 of 41

secrets against flagrant industrial espionage. See *E. I. du Pont de Nemours & Co., Inc. v. Christopher, supra.* It follows that reasonable use of a trade secret including controlled disclosure to employees and licensees is consistent with the requirement of relative secrecy.

## § 2.   [Injunctive Relief]

(a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

(b) If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

### Commissioners' Comment

Injunctions restraining future use and disclosure of misappropriated trade secrets frequently are sought. Although punitive perpetual injunctions have been granted, *e. g., Elcor Chemical Corp. v. Agri-Sul, Inc.,* 494 S.W. 2d 204 (Tex.Civ.App.1973). Section 2(a) of this Act adopts the position of the trend of authority limiting the duration of injunctive relief to the extent of the temporal advantage over good faith competitors gained by a misappropriator. See, *c. g., K-2 Ski Co. v. Head Ski Co., Inc.,* 506 F. 2d 471 (CA9, 1974) (maximum appropriate duration of both temporary and permanent injunctive relief is period of time it would have taken defendant to

discover trade secrets lawfully through either independent development or reverse engineering of plaintiff's products).

The general principle of section 2(a) and (b) is that an injunction should last for as long as is necessary, but no longer than is necessary, to eliminate the commercial advantage or "lead time" with respect to good faith competitors that a person has obtained through misappropriation. Subject to any additional period of restraint necessary to negate lead time, an injunction accordingly should terminate when a former trade secret becomes either generally known to good faith competitors or generally knowable

7

## TRADE SECRETS ACT

to them because of the lawful availability of products that can be reverse engineered to reveal a trade secret.

For example, assume that A has a valuable trade secret of which B and C, the other industry members, are originally unaware. If B subsequently misappropriates the trade secret and is enjoined from use, but C later lawfully reverse engineers the trade secret, the injunction restraining B is subject to termination as soon as B's lead time has been dissipated. All of the persons who could derive economic value from use of the information are now aware of it, and there is no longer a trade secret under section 1(4). It would be anti-competitive to continue to restrain B after any lead time that B had derived from misappropriation had been removed.

If a misappropriator either has not taken advantage of lead time or good faith competitors already have caught up with a misappropriator at the time that a case is decided, future disclosure and use of a former trade secret by a misappropriator will not damage a trade secret owner and no injunctive restraint of future disclosure and use is appropriate. See, e. g., *Northern Petrochemical Co. v. Tomlinson*, 484 F.2d 1057 (CA7, 1973) (affirming trial court's denial of preliminary injunction in part because an explosion at its plant prevented an alleged misappropriator from taking advantage of lead time); *Kubik, Inc. v. Hull*, 185 USPQ 391 (Mich.App.1974) (discoverability of trade secret by lawful

reverse engineering made by injunctive relief punitive rather than compensatory).

Section 2(b) deals with a distinguishable situation in which future use by a misappropriator will damage a trade secret owner but an injunction against future use nevertheless is unreasonable under the particular circumstances of a case. Situations in which this unreasonableness can exist include the existence of an overriding public interest which requires the denial of a prohibitory injunction against future damaging use and a person's reasonable reliance upon acquisition of a misappropriated trade secret in good faith and without reason to know of its prior misappropriation that would be prejudiced by a prohibitory injunction against future damaging use. *Republic Aviation Corp. v. Schenk*, 152 USPQ 830 (N.Y.Sup.Ct.1967) illustrates the public interest justification for withholding prohibitory injunctive relief. The court considered that enjoining a misappropriator from supplying the U.S. with an aircraft weapons control system would have endangered military personnel in Viet Nam. The prejudice to a good faith third party justification for withholding prohibitory injunctive relief can arise upon a trade secret owner's notification to a good faith third party that the third party has knowledge of a trade secret as a result of misappropriation by another. This notice suffices to make the third party a misappropriator thereafter under section 1(2)(ii)(B)(I). In weighing an aggrieved person's interests and the inter-

ests of a t[...]
lied in goo[...]
ability to [...]
court may [...]
ing future [...]
by the thir[...]
ed. With [...]
quirers of [...]
secrets, sec[...]
with the p[...]
ment Tort[...]
(1939), bu[...]
ment's lite[...]
lute immun[...]
ties who ha[...]
faith for a[...]
propriated [...]
tion taken [...]
supposed b[...]
*Inc. v. Pills*[...]
(CA7 1971[...]
ant's purch[...]
poration to [...]
had been d[...]
was not co[...]
munity upp[...]

When se[...]
court is giv[...]
stitution i[...]
future use [...]
reasonable [...]
tion prohibi[...]
all injunctiv[...]
priation, a[...]
tion if appr[...]
appropriator[...]



§ 3.  [D[...]

(a) In a[...]
may recove[...]
tion. A c[...]
ment cause[...]
in computi[...]

8

## TRADE SECRETS ACT

ests of a third party who has relied in good faith upon his or her ability to utilize information, a court may conclude that restraining future use of the information by the third party is unwarranted. With respect to innocent acquirers of misappropriated trade secrets, section 2(b) is consistent with the principle of 4 Restatement Torts (First) § 758(b) (1939), but rejects the Restatement's literal conferral of absolute immunity upon all third parties who have paid value in good faith for a trade secret misappropriated by another. The position taken by the Uniform Act is supported by *Forest Laboratories, Inc. v. Pillsbury Co.,* 452 F.2d 621 (CA7, 1971) in which a defendant's purchase of assets of a corporation to which a trade secret had been disclosed in confidence was not considered to confer immunity upon the defendant.

When section 2(b) applies, a court is given discretion to substitute an injunction conditioning future use upon payment of a reasonable royalty for an injunction prohibiting future use. Like all injunctive relief for misappropriation, a royalty order injunction is appropriate only if a misappropriator has obtained a competitive advantage through misappropriation and only for the duration of that competitive advantage. In some situations, typically those involving good faith acquirers of trade secrets misappropriated by others, a court may conclude that the same considerations that render a prohibitory injunction against future use inappropriate also render a royalty order injunction inappropriate. See, generally, *Prince Manufacturing, Inc. v. Automatic Partner, Inc.,* 198 USPQ 618 (N.J.Super. Ct.1976) (purchaser of misappropriator's assets from receiver after trade secret disclosed to public through sale of product not subject to liability for misappropriation).

Section 2(c) authorizes mandatory injunctions requiring that a misappropriator return the fruits of misappropriation to an aggrieved person, *e. g.,* the return of stolen blueprints or the surrender of surreptitious photographs or recordings.

Where more than one person is entitled to trade secret protection with respect to the same information, only that one from whom misappropriation occurred is entitled to a remedy.

## § 3.   [Damages]

(a) In addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

9

## TRADE SECRETS ACT

(b) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subsection (a).

### Commissioners' Comment

Like injunctive relief, a monetary recovery for trade secret misappropriation is appropriate only for the period in which information is entitled to protection as a trade secret, plus the additional period, if any, in which a misappropriator retains an advantage over good faith competitors because of misappropriation. Actual damage to a complainant and unjust benefit to a misappropriator are caused by misappropriation during this time alone. See *Conmar Products Corp. v. Universal Slide Fastener Co.*, 172 F. 2d 150 (CA2, 1949) (no remedy for period subsequent to disclosure of trade secret by issued patent); *Carboline Co. v. Jarboe*, 454 S.W.2d 540 (Mo.1970) (recoverable monetary relief limited to period that it would have taken misappropriator to discover trade secret without misappropriation). A claim for actual damages and net profits can be combined with a claim for injunctive relief, but, if both claims are granted, the injunctive relief ordinarily will preclude a monetary award for a period in which the injunction is effective.

As long as there is no double counting, Section 3(a) adopts the principle of the recent cases allowing recovery of both a complainant's actual losses and a misappropriator's unjust benefit that are caused by misappropriation. *E. g., Tri-Tron International v. Velto*, 525 F.2d 432 (CA9, 1975)

(complainant's loss and misappropriator's benefit can be combined). Because certain cases may have sanctioned double counting in a combined award of losses and unjust benefit, *e. g., Telex Corp. v. IBM Corp.*, 510 F.2d 894 (CA10, 1975) (*per curiam*), cert. dismissed, 423 U.S. 802 (1975) (IBM recovered rentals lost due to displacement by misappropriator's products without deduction for expenses saved by displacement; as a result of rough approximations adopted by the trial judge, IBM also may have recovered developmental costs saved by misappropriator through misappropriation with respect to the same customers), the Act adopts an express prohibition upon the counting of the same item as both a loss to a complainant and an unjust benefit to a misappropriator.

Monetary relief can be appropriate whether or not injunctive relief is granted under section 2. If a person charged with misappropriation has acquired knowledge of a trade secret in good faith without reason to know of its misappropriation by another, however, the same considerations that can justify denial of all injunctive relief also can justify denial of all monetary relief. See *Conmar Products Corp. v. Universal Slide Fastener Co.*, 172 F. 2d 1950 (CA2, 1949) (no relief against new employer of employee subject to contractual obligation not to disclose former employer's

10

---

trade secrets
innocently ha
to develop tl
to notice of

If willful
propriation i
tion 3(b) at
award a co
damages in a
recovery un
amount not

§ 4. [A
If (a) a
a motion t
faith, or (i
court may
party.



Section 4
award reaso
a prevailing
cumstances
cious claims
to specious
propriator t
relief, and t
misappropri
situation tl

§ 5. [F
In an ac
of an alleg
clude gran
proceedings

## TRADE SECRETS ACT

trade secrets where new employer innocently had committed $40,000 to develop the trade secrets prior to notice of misappropriation).

If willful and malicious misappropriation is found to exist, section 3(b) authorizes the court to award a complainant exemplary damages in addition to the actual recovery under section 3(a) an amount not exceeding twice that

recovery. This provision follows federal patent law in leaving discretionary trebling to the judge even though there may be a jury, *compare* 35 U.S.C. § 284 (1976).

Whenever more than one person is entitled to trade secret protection with respect to the same information, only that one from whom misappropriation occurred is entitled to a remedy.

## § 4.  [Attorney's Fees]

If (i) a claim of misappropriation is made in bad faith, (ii) a motion to terminate an injunction is made or resisted in bad faith, or (iii) willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party.

### Commissioners' Comment

Section 4 allows a court to award reasonable attorney fees to a prevailing party in specified circumstances as a deterrent to specious claims of misappropriation, to specious efforts by a misappropriator to terminate injunctive relief, and to willful and malicious misappropriation. In the latter situation, the court should take

into consideration the extent to which a complainant will recover exemplary damages in determining whether additional attorney's fees should be awarded. Again, patent law is followed in allowing the judge to determine whether attorney's fees should be awarded even if there is a jury, *compare* 35 U.S.C. Section 285 (1976).

## § 5.  ·[Preservation of Secrecy]

In an action under this Act, a court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include granting protective orders in connection with discovery proceedings, holding in-camera hearings, sealing the records of

11

# TRADE SECRETS ACT

the action, and ordering any person involved in the litigation not to disclose an alleged trade secret without prior court approval.

### Commissioners' Comment

If reasonable assurances of maintenance of secrecy could not be given, meritorious trade secret litigation would be chilled. In fashioning safeguards of confidentiality, a court must ensure that a respondent is provided sufficient information to present a defense and a trier of fact sufficient information to resolve the merits. In addition to the illustrative techniques specified in the statute, courts have protected secrecy in these cases by restricting disclosures to a party's counsel and his or her assistants and by appointing a disinterested expert as a special master to hear secret information and report conclusions to the court.

## § 6.  [Statute of Limitations]

An action for misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. For the purposes of this section, a continuing misappropriation constitutes a single claim.

### Commissioners' Comment

There presently is a conflict of authority as to whether trade secret misappropriation is a continuing wrong. Compare Monolith Portland Midwest Co. v. Kaiser Aluminum & Chemical Corp., 407 F.2d 288 (CA9, 1969) (no continuing wrong under California law—limitation period upon all recovery begins upon initial misappropriation) with Underwater Storage, Inc. v. U. S. Rubber Co., 371 F.2d 950 (CADC, 1966), cert. den., 386 U.S. 911 (1967) (continuing wrong under general principles—limitation period with respect to a specific act of misappropriation begins at the time that the act of misappropriation occurs).

This Act rejects a continuing wrong approach to the statute of limitations but delays the commencement of the limitation period until an aggrieved person discovers or reasonably should have discovered the existence of misappropriation. If objectively reasonable notice of misappropriation exists, three years is sufficient time to vindicate one's legal rights.

12

TRADE SECRETS ACT

## § 7.   [Effect on Other Law]

(a) This Act displaces conflicting tort, restitutionary, and other law of this State pertaining to civil liability for misappropriation of a trade secret.

(b) This Act does not affect:

(1) contractual or other civil liability or relief that is not based upon misappropriation of a trade secret; or

(2) criminal liability for misappropriation of a trade secret.

### Commissioners' Comment

This Act is not a comprehensive remedy. It applies to duties imposed by law in order to protect competitively significant secret information. It does not apply to duties voluntarily assumed through an express or an implied-in-fact contract. The enforceability of covenants not to disclose trade secrets and covenants not to compete that are intended to protect trade secrets, for example, are governed by other law. The Act also does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal.

## § 8.   [Uniformity of Application and Construction]

This Act shall be applied and construed to effectuate its general purpose to make uniform the law with respect to the subject of this Act among states enacting it.

## § 9.   [Short Title]

This Act may be cited as the Uniform Trade Secrets Act.

13

## TRADE SECRETS ACT

## § 10.   [Severability]

If any provision of this Act or its application to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of the Act which can be given effect without the invalid provision or application, and to this end the provisions of this Act are severable.

## § 11.   [Time of Taking Effect]

This Act takes effect on _____, and does not apply to misappropriation occurring prior to the effective date.

## § 12.   [Repeal]

The following Acts and parts of Acts are repealed:

(1)

(2)

(3)

# EXHIBIT 3

LIS - 1a

LEGISLATIVE INTENT SERVICE

(800) 666-1917

CALIFORNIA LEGISLATURE—1983-84 REGULAR SESSION

## ASSEMBLY BILL

No. 501

Introduced by Assemblyman Harris

February 7, 1983

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, relating to trade secrets.

### LEGISLATIVE COUNSEL'S DIGEST

AB 501, as introduced, Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms; provides for injunctive relief, damages, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1.   Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:
3
4      TITLE 5.   UNIFORM TRADE SECRETS ACT
5
6    3426.   This title may be cited as the Uniform Trade
7  Secrets Act.
8    3426.1.   As used in this title, unless the context requires
9  otherwise:
10    (a) "Improper    means"    includes    theft,    bribery,

AB 501

— 2 —

1 misrepresentation, breach or inducement of a breach of
2 a duty to maintain secrecy, or espionage through
3 electronic or other means.
4 (b) "Misappropriation" means:
5 (1) Acquisition of a trade secret of another by a person
6 who knows or has reason to know that the trade secret
7 was acquired by improper means; or
8 (2) Disclosure or use of a trade secret of another
9 without express or implied consent by a person who:
10 (A) Used improper means to acquire knowledge of
11 the trade secret; or
12 (B) At the time of disclosure or use, knew or had
13 reason to know that his or her knowledge of the trade
14 secret was:
15 (i) Derived from or through a person who had utilized
16 improper means to acquire it;
17 (ii) Acquired under circumstances giving rise to a
18 duty to maintain its secrecy or limit its use; or
19 (iii) Derived from or through a person who owed a
20 duty to the person seeking relief to maintain its secrecy
21 or limit its use; or
22 (C) Before a material change of his or her position,
23 knew or had reason to know that it was a trade secret and
24 that knowledge of it had been acquired by accident or
25 mistake.
26 (c) "Person" means a natural person, corporation,
27 business trust, estate, trust, partnership, association, joint
28 venture, government, governmental subdivision or
29 agency, or any other legal or commercial entity.
30 (d) "Trade secret" means information, including a
31 formula, pattern, compilation, program, device, method,
32 technique, or process that:
33 (1) Derives independent economic value, actual or
34 potential, from not being generally known to, and not
35 being readily ascertainable by proper means by, other
36 persons who can obtain economic value from its
37 disclosure or use; and
38 (2) Is the subject of efforts that are reasonable under
39 the circumstances to maintain its secrecy.
40 3426.2. (a) Actual or threatened misappropriation

— 3 —

AB 501

1 may be enjoined. Upon application to the court, an
2 injunction shall be terminated when the trade secret has
3 ceased to exist, but the injunction may be continued for
4 an additional reasonable period of time in order to
5 eliminate commercial advantage that otherwise would
6 be derived from the misappropriation.
7 (b) If the court determines that it would be
8 unreasonable to prohibit future use, an injunction may
9 condition future use upon payment of a reasonable
10 royalty for no longer than the period of time the use could
11 have been prohibited.
12 (c) In appropriate circumstances, affirmative acts to
13 protect a trade secret may be compelled by court order.
14 3426.3. (a) In addition to or in lieu of injunctive
15 relief, a complainant may recover damages for the actual
16 loss caused by misappropriation. A complainant also may
17 recover for the unjust enrichment caused by
18 misappropriation that is not taken into account in
19 computing damages for actual loss.
20 (b) If willful and malicious misappropriation exists,
21 the court may award exemplary damages in an amount
22 not exceeding twice any award made under subdivision
23 (a).
24 3426.4. If a claim of misappropriation is made in bad
25 faith, a motion to terminate an injunction is made or
26 resisted in bad faith, or willful and malicious
27 misappropriation exists, the court may award reasonable
28 attorney's fees to the prevailing party.
29 3426.5. In an action under this title, a court shall
30 preserve the secrecy of an alleged trade secret by
31 reasonable means, which may include granting
32 protective orders in connection with discovery
33 proceedings, holding in-camera hearings, sealing the
34 records of the action, and ordering any person involved
35 in the litigation not to disclose an alleged trade secret
36 without prior court approval.
37 3426.6. An action for misappropriation must be
38 brought within three years after the misappropriation is
39 discovered or by the exercise of reasonable diligence
40 should have been discovered. For the purposes of this



AB 501

— 4 —

1 section, a continuing misappropriation constitutes a
2 single claim.
3    3426.7.   Except as otherwise expressly provided, this
4 title does not supersede any statute relating to
5 misappropriation of a trade secret, or any statute
6 otherwise regulating trade secrets.
7    3426.8.   This title shall be applied and construed to
8 effectuate its general purpose to make uniform the law
9 with respect to the subject of this title among states
10 enacting it.
11    3426.9.   If any provision of this title or its application
12 to any person or circumstances is held invalid, the
13 invalidity does not affect other provisions or applications
14 of the title which can be given effect without the invalid
15 provision or application, and to this end the provisions of
16 this title are severable.
17    3426.10.   This title does not apply to misappropriation
18 occurring prior to January 1, 1984.

O

LEGISLATIVE INTENT SERVICE     (800) 666-1917

# EXHIBIT 4

LIS - 1b

LEGISLATIVE INTENT SERVICE    (800) 666-1917



# AMENDED IN ASSEMBLY APRIL 21, 1983

CALIFORNIA LEGISLATURE—1983-84 REGULAR SESSION

## ASSEMBLY BILL

No. 501

Introduced by Assemblyman Harris

February 7, 1983

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code, *to add Section 2036.2 to the Code of Civil Procedure, and to add Section 6266 to the Government Code,* relating to trade secrets.

### LEGISLATIVE COUNSEL'S DIGEST

AB 501, as amended, Harris. Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, *or other relief,* requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1.    Title 5 (commencing with Section 3426)
2    is added to Part 1 of Division 4 of the Civil Code, to read:

# TITLE 5.  UNIFORM TRADE SECRETS ACT

3426. This title may be cited as the Uniform Trade Secrets Act.

3426.1. As used in this title, unless the context requires otherwise:

(a) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

(b) "Misappropriation" means:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

(c) "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

(d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or

LEGISLATIVE INTENT SERVICE (800) 666-1917

potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

3426.2. (a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional reasonable period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

(b) If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

3426.3. (a) In addition to or in lieu of injunctive relief, a A complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

(b) If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b).

3426.4. If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party.

AB 501

— 4 —

1 3426.5. In an action under this title, a court shall
2 preserve the secrecy of an alleged trade secret by
3 reasonable means, which may include granting
4 protective orders in connection with discovery
5 proceedings, holding in-camera hearings, sealing the
6 records of the action, and ordering any person involved
7 in the litigation not to disclose an alleged trade secret
8 without prior court approval.
9 3426.6. An action for misappropriation must be
10 brought within three years after the misappropriation is
11 discovered or by the exercise of reasonable diligence
12 should have been discovered. For the purposes of this
13 section, a continuing misappropriation constitutes a
14 single claim.
15 3426.7. Except as otherwise expressly provided, this
16 title does not supersede any statute relating to
17 misappropriation of a trade secret, or any statute
18 otherwise regulating trade secrets.
19 *3426.8. This title does not affect any contractual rights*
90 *or remedies.*
21 3426.8.
22 3426.9. This title shall be applied and construed to
23 effectuate its general purpose to make uniform the law
24 with respect to the subject of this title among states
25 enacting it.
26 3426.9.
27 3426.10. If any provision of this title or its application
28 to any person or circumstances is held invalid, the
29 invalidity does not affect other provisions or applications
30 of the title which can be given effect without the invalid
31 provision or application, and to this end the provisions of
32 this title are severable.
33 3426.10.
34 *3426.11. This title does not apply to misappropriation
35 occurring prior to January 1, 1984. If a continuing
36 misappropriation otherwise covered by this title began
37 before January 1, 1984, this title does not apply to the part
38 of the misappropriation occurring before that date. This
39 title does apply to the part of the misappropriation
40 occurring on or after that date unless the appropriation*

AB 501

— 5 —

1 *was not a misappropriation under the law in effect before
2 the operative date of this title.*
3 SEC. 2. Section 2036.2 is added to the Code of Civil
4 Procedure, to read:
5 *2036.2. In any action alleging the misappropriation of
6 a trade secret under the Uniform Trade Secrets Act
7 (Title 5 (commencing with Section 3426) of Part 1 of
8 Division 4 of the Civil Code), before commencing
9 discovery relating to the trade secret under Chapter 2
10 (commencing with Section 1985) or Article 3
11 (commencing with Section 2016) of Chapter 3 of this
12 title, the party alleging the misappropriation shall
13 identify the trade secret with particularity subject to any
14 orders which may be appropriate under Section 3426.5 of
15 the Civil Code.*
16 SEC. 3. Section 6266 is added to the Government
17 Code, to read:
18 *6266. If the disclosure of a public record under this
19 chapter constitutes a misappropriation of a trade secret
20 under the Uniform Trade Secrets Act (Title 5
21 (commencing with Section 3426) of Part 1 of Division 4
22 of the Civil Code), damages may not be recovered
23 against the state or local agency or its employees unless
24 the disclosure was made in bad faith.*



# EXHIBIT 5

ASSEMBLY COMMITTEE ON JUDICIARY                    AB 501
ELIHU M. HARRIS, Chairman

AB 501 (Harris)  As amended 04/21/83

SUBJECT

This bill is intended to enact the Uniform Trade Secrets Act.

DIGEST

This bill would establish a statutory scheme to protect trade
secrets, known as the Uniform Trade Secrets Act.  Among other
things, the bill would:

-    enact a series of definitions.  Trade secret is defined
     as information that (1) derives independent economic
     value from not being generally known to, and not being
     readily ascertainable by proper means by, other persons
     who can obtain economic value from its disclosure or
     use; and (2) is the subject of efforts that are
     reasonable under the circumstances to maintain its
     secrecy.

-    provide for the enjoining of actual or threatened
     misappropriation, as defined, of a trade secret.

-    permit a complainant to recover actual damages for the
     loss caused by the improper acquisition or disclosure of
     a trade secret.  Provision is also made for recovery for
     the unjust enrichment caused by misappropriation.  If
     neither damages nor unjust enrichment caused by
     misappropriation are provable, the court may order
     payment of a reasonable royalty for no longer than the
     period the use could have been prohibited.  Exemplary
     damages would be permitted for willful and malicious
     misappropriation.

-    authorize the award of reasonable attorneys' fees to the
     prevailing party where a claim of misappropriation is
     made in bad faith or a motion to terminate an injunction
     is made or resisted in bad faith, or where willful and
     malicious misappropriation is found.

-    authorize a court to use reasonable means, such as
     protective orders, sealing of records and in-camera
     hearings, to preserve the secrecy of a trade secret in
     an action under the Act.

(800) 666-1917

LEGISLATIVE INTENT SERVICE

(CONTINUED)

Consultant R. LeBov                    LIS - 3a            AB 501
04/25/83                                                  Page 1

- provide that an action for misappropriation must be brought within 3 years after it was discovered or, through reasonable diligence, should have been discovered.

- provide that the Act does not affect any contractual rights or remedies and that, except as otherwise expressly provided, it does not supersede any statute relating to misappropriation of a trade secret or otherwise regulations trade secrets.

- provide that, in any action alleging misappropriation under the Act, before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with particularity, subject to any protective orders which may be appropriate.

- immunize state and local public agencies from damages for disclosure, under the Public Records Act, of a public record constituting a misappropriation of a trade secret unless the disclosure was made in bad faith.

The bill's provisions would not apply to misappropriation occurring prior to January 1, 1984.  The Act would apply to the part of a continuing misappropriation occurring on or after that date unless it was not a misappropriation under the law in effect before the bill's operative date.

STAFF COMMENTS

1. This bill would enact the Uniform Trade Secrets Act in California.  That Act was drafted and recommended for enactment in all states by the National Conference of Commissioners on Uniform State Laws in 1979; and was approved by the American Bar Association in 1980.  It has been enacted in at least 8 other states (Minnesota, Kansas, Idaho, Washington, Arkansas, Delaware, Louisiana, and Indiana).

   In its prefatory note to the Act, the National Conference stated that "there is undue uncertainty concerning the parameters of trade secret protection, and the appropriate remedies for misappropriation of a trade secret."  The prefatory note further states that "like traditional trade secret law, the Uniform Act contains general concepts.  The contribution of the Uniform Act is substitution of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law.  The Uniform Act also codifies the

(800) 666-1917    LEGISLATIVE INTENT SERVICE

(CONTINUED)

results of the better reasoned cases concerning the remedies for trade secret misappropriation."

2. Existing California statutory law contains a number of other provisions which define or otherwise affect trade secrets. For example, Penal Code Section 499c provides for criminal penalties for misappropriation of trade secrets. This bill, which provides for civil remedies, is generally not intended to affect any of the existing provisions. It states that, except as otherwise expressly provided, it does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.

3. The Patent, Trademark and Copyright Section of the State Bar has expressed concern with this bill's definition of "trade secret." Specifically, the Section feels that it "would invite an argument in almost every trade secret case that, since the trade secret could have been reverse engineered, or could have been learned from a literature search, or could have been compiled from other knowledge, it was 'readily ascertainable'".

The Uniform Commissioners' comment on the definition of trade secret states that "one of the broadly stated policies behind trade secret law is the maintenance of standards of commercial ethics." The commissioners point out that the Restatement of Torts notes that "proper means" includes, among other things, "discovery by 'reverse engineering,' that is, by starting with the known product and working backward to find the method by which it was developed. The acquisition of the known product must, of course, also be by a fair and honest means, such as purchase of the item on the open market for reverse engineering to be lawful." Under the Restatement, "proper means" also includes discovery by independent invention, discovery under a license from the owner of the trade secret, observation of the item in public use or on public display, or obtaining the trade secret from published literature.

4. California Rural Legal Assistance is concerned that this measure might be construed to limit public access to pesticide testing data under the Public Records Act. That Act exempts, from required disclosure, records which may not be disclosed pursuant to provisions of state law. (Government Code Section 6254)

According to CRLA, "there is a body of data submitted to the Department of Food and Agriculture relative to the health and environmental hazards and efficacy of pesticides that it licenses and regulates. It is crucial that the public have access to the data so that the public can participate in the

(CONTINUED)

Consultant R. LeBov
04/25/83

AB 501
Page 3

LEGISLATIVE INTENT SERVICE    (800) 666-1917

Department's regulatory decisions." Would this bill inappropriately restrict public access to health and safety testing data submitted to regulatory and licensing agencies?

(800) 666-1917    LEGISLATIVE INTENT SERVICE

Consultant R. LeBov
04/25/83

AB 501
Page 4

SOURCE

National Conference of Commissioners on Uniform State Laws

SUPPORT

General Electric
Ford Motor Company

OPPOSITION

Unknown

LEGISLATIVE INTENT SERVICE    (800) 666-1917

Consultant R. LeBov
04/25/83

AB 501

# EXHIBIT 6

ASSEMBLY COMMITTEE ON JUDICIARY                          AB 501
ELIHU M. HARRIS, Chairman

\* AB 501 (Harris)  As amended 04/21/83

\*\*AMENDED IN SENATE:

SUBJECT

This bill is intended to enact the Uniform Trade Secrets Act.

DIGEST

This bill would establish a statutory scheme to protect trade
secrets, known as the Uniform Trade Secrets Act.  Among other
things, the bill would:

- enact a series of definitions.  Trade secret is defined
  as information that (1) derives independent economic
  value from not being generally known to, and not being the
  \*\* public or ~~readily ascertainable by proper means by~~, other persons
  who can obtain economic value from its disclosure or
  use; and (2) is the subject of efforts that are
  reasonable under the circumstances to maintain its
  secrecy.

- provide for the enjoining of actual or threatened
  misappropriation, as defined, of a trade secret.

- permit a complainant to recover actual damages for the
  loss caused by the improper acquisition or disclosure of
  a trade secret.  Provision is also made for recovery for
  the unjust enrichment caused by misappropriation.  If
  neither damages nor unjust enrichment caused by
  misappropriation are provable, the court may order
  payment of a reasonable royalty for no longer than the
  period the use could have been prohibited.  Exemplary
  damages would be permitted for willful and malicious
  misappropriation.

- authorize the award of reasonable attorneys' fees to the
  prevailing party where a claim of misappropriation is
  made in bad faith or a motion to terminate an injunction
  is made or resisted in bad faith, or where willful and
  malicious misappropriation is found.

- authorize a court to use reasonable means, such as
  protective orders, sealing of records and in-camera
  hearings, to preserve the secrecy of a trade secret in
  an action under the Act.

\*AMENDED IN COMMITTEE:  to provide that this bill does not affect the
disclosure of a public record under the California Public Records Act.
Also, any determination as to whether the disclosure of a public record
constitutes a misappropriation of a trade secret and the rights and
remedies thereto shall be made pursuant to the law in effect before
the operative date of the bill.                    (CONTINUED)

Consultant R. LeBov                                 AB 501
04/25/83                                            Page 1

LIS - 3b

(800) 666-1917

LEGISLATIVE INTENT SERVICE



    - provide that an action for misappropriation must be brought within 3 years after it was discovered or, through reasonable diligence, should have been discovered.

** - provide that the Act does not ~~affect any contractual rights or remedies and that, except as otherwise expressly provided, it does not~~ supersede any statute relating to misappropriation of a trade secret or otherwise regulati~~ons~~ng trade secrets.

- provide that, in any action alleging misappropriation under the Act, before commencing discovery relating to the trade secret, the party alleging the misappropriation shall identify the trade secret with particularity, subject to any protective orders which may be appropriate.

* ~~- immunize state and local public agencies from damages for disclosure, under the Public Records Act, of a public record constituting a misappropriation of a trade secret unless the disclosure was made in bad faith.~~

** It would further (provide) that [illegible] ctual remedies, civil remedies which are not based on trade secret misappropriation, or criminal remedies.

** The bill's provisions would not apply to misappropriation occurring prior to January 1, 1985. The Act would apply to the part of a continuing misappropriation occurring on or after that date unless it was not a misappropriation under the law in effect before the bill's operative date.



STAFF COMMENTS

1. This bill would enact the Uniform Trade Secrets Act in California. That Act was drafted and recommended for enactment in all states by the National Conference of Commissioners on Uniform State Laws in 1979; and was approved by the American Bar Association in 1980. It has been enacted in at least 8 other states (Minnesota, Kansas, Idaho, Washington, Arkansas, Delaware, Louisiana, and Indiana).

   In its prefatory note to the Act, the National Conference stated that "there is undue uncertainty concerning the parameters of trade secret protection, and the appropriate remedies for misappropriation of a trade secret." The prefatory note further states that "like traditional trade secret law, the Uniform Act contains general concepts. The contribution of the Uniform Act is substitution of unitary definitions of trade secret and trade secret misappropriation, and a single statute of limitations for the various property, quasi-contractual, and violation of fiduciary relationship theories of noncontractual liability utilized at common law. The Uniform Act also codifies the



(CONTINUED)

Consultant R. LeBov
04/25/83

results of the better reasoned cases concerning the remedies for trade secret misappropriation."

2. Existing California statutory law contains a number of other provisions which define or otherwise affect trade secrets. For example, Penal Code Section 499c provides for criminal penalties for misappropriation of trade secrets. This bill, which provides for civil remedies, is generally not intended to affect any of the existing provisions. It states that, except as otherwise expressly provided, it does not supersede any statute relating to misappropriation of a trade secret, or any statute otherwise regulating trade secrets.

** 3. The Patent, Trademark and Copyright Section of the State Bar has expressed concern with this bill's definition of "trade secret." Specifically, the Section feels that it "would invite an argument in almost every trade secret case that, since the trade secret could have been reverse engineered, or could have been learned from a literature search, or could have been compiled from other knowledge, it was 'readily ascertainable'".

The Uniform Commissioners' comment on the definition of trade secret states that "one of the broadly stated policies behind trade secret law is the maintenance of standards of commercial ethics." The commissioners point out that the Restatement of Torts notes that "proper means" includes, among other things, "discovery by 'reverse engineering,' that is, by starting with the known product and working backward to find the method by which it was developed. The acquisition of the known product must, of course, also be by a fair and honest means, such as purchase of the item on the open market for reverse engineering to be lawful." Under the Restatement, "proper means" also includes discovery by independent invention, discovery under a license from the owner of the trade secret, observation of the item in public use or on public display, or obtaining the trade secret from published literature.

** 4. California Rural Legal Assistance is concerned that this measure might be construed to limit public access to pesticide testing data under the Public Records Act. That Act exempts, from required disclosure, records which may not be disclosed pursuant to provisions of state law. (Government Code Section 6254)

According to CRLA, "there is a body of data submitted to the Department of Food and Agriculture relative to the health and environmental hazards and efficacy of pesticides that it licenses and regulates. It is crucial that the public have access to the data so that the public can participate in the

(CONTINUED)

Consultant R. LeBov
04/25/83

AB 501
Page 3



~~Department~~'s regulatory decisions." Would this bill inappropriately ~~restrict public access~~ to health and safety ~~testing data~~ submitted to regulatory and licensing agencies?

LEGISLATIVE INTENT SERVICE    (800) 666-1917



Consultant R. LeBov
04/25/83

AB 501
Page 4

SOURCE

National Conference of Commissioners on Uniform State Laws

SUPPORT

General Electric
Ford Motor Company

OPPOSITION

Unknown



LEGISLATIVE INTENT SERVICE    (800) 666-1917

Consultant R. LeBov
04/25/83

AB 501

# EXHIBIT 7

LIS - 1c

AMENDED IN ASSEMBLY MAY 3, 1983
AMENDED IN ASSEMBLY APRIL 21, 1983

CALIFORNIA LEGISLATURE—1983-84 REGULAR SESSION

## ASSEMBLY BILL                    No. 501

Introduced by Assemblyman Harris

February 7, 1983

An act to add Title 5 (commencing with Section 3426) to
Part 1 of Division 4 of the Civil Code, *and* to add Section
2036.2 to the Code of Civil Procedure ; and to add Section
6266 to the Government Code, relating to trade secrets.

### LEGISLATIVE COUNSEL'S DIGEST

AB 501, as amended, Harris.  Uniform Trade Secrets Act.
Under existing law, no specific cause of action exists for
misappropriation of a trade secret.
This bill would establish that cause of action, through
enactment in California of the Uniform Trade Secrets Act,
which defines terms, provides for injunctive relief, damages,
or other relief, requirements that a court take measures to
preserve the secrecy of an alleged trade secret by reasonable
means, and a statute of limitations applicable to the cause of
action, among other provisions.
Vote: majority. Appropriation: no. Fiscal committee: no.
State-mandated local program: no.

*The people of the State of California do enact as follows:*

1     SECTION 1.    Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:


LEGISLATIVE INTENT SERVICE          (800) 666-1917

— 2 —

TITLE 5.   UNIFORM TRADE SECRETS ACT

3426. This title may be cited as the Uniform Trade Secrets Act.

3426.1. As used in this title, unless the context requires otherwise:

(a) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

(b) "Misappropriation" means:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

(c) "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

(d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or

— 3 —

potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

3426.2. (a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

(b) If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

3426.3. (a) A complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

(b) If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) If willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subdivision (a) or (b).

3426.4. If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party.

3426.5. In an action under this title, a court shall preserve the secrecy of an alleged trade secret by



AB 501

— 4 —

1 reasonable means, which may include granting
2 protective orders in connection with discovery
3 proceedings, holding in-camera hearings, sealing the
4 records of the action, and ordering any person involved
5 in the litigation not to disclose an alleged trade secret
6 without prior court approval.
7   3426.6. An action for misappropriation must be
8 brought within three years after the misappropriation is
9 discovered or by the exercise of reasonable diligence
10 should have been discovered. For the purposes of this
11 section, a continuing misappropriation constitutes a
12 single claim.
13   3426.7. (a) Except as otherwise expressly provided,
14 this title does not supersede any statute relating to
15 misappropriation of a trade secret, or any statute
16 otherwise regulating trade secrets.
17   (b) *This title does not affect the disclosure of a public*
18 *record by a state or local agency under the California*
19 *Public Records Act (Chapter 3.5 (commencing with*
20 *Section 6250) of Division 7 of Title 1 of the Government*
21 *Code). Any determination as to whether the disclosure of*
22 *a public record constitutes a misappropriation of a trade*
23 *secret and the rights and remedies with respect thereto*
24 *shall be made pursuant to the law in effect before the*
25 *operative date of this title.*
26   3426.8. This title does not affect any contractual rights
27 or remedies.
28   3426.9. This title shall be applied and construed to
29 effectuate its general purpose to make uniform the law
30 with respect to the subject of this title among states
31 enacting it.
32   3426.10. If any provision of this title or its application
33 to any person or circumstances is held invalid, the
34 invalidity does not affect other provisions or applications
35 of the title which can be given effect without the invalid
36 provision or application, and to this end the provisions of
37 this title are severable.
38   3426.11. This title does not apply to misappropriation
39 occurring prior to January 1, 1984. If a continuing
40 misappropriation otherwise covered by this title began

AB 501

— 5 —

1 before January 1, 1984, this title does not apply to the part
2 of the misappropriation occurring before that date. This
3 title does apply to the part of the misappropriation
4 occurring on or after that date unless the appropriation
5 was not a misappropriation under the law in effect before
6 the operative date of this title.
7   SEC. 2. Section 2036.2 is added to the Code of Civil
8 Procedure, to read:
9   2036.2. In any action alleging the misappropriation of
10 a trade secret under the Uniform Trade Secrets Act
11 (Title 5 (commencing with Section 3426) of Part 1 of
12 Division 4 of the Civil Code), before commencing
13 discovery relating to the trade secret under Chapter 2
14 (commencing with Section 1985) or Article 3
15 (commencing with Section 2016) of Chapter 3 of this
16 title, the party alleging the misappropriation shall
17 identify the trade secret with particularity subject to any
18 orders which may be appropriate under Section 3426.5 of
19 the Civil Code.
20   SEC. 3. Section 6256 is added to the Government
21 Code, to read:
22   6256. If the disclosure of a public record under this
23 chapter constitutes a misappropriation of a trade secret
24 under the Uniform Trade Secrets Act (Title 5
25 (commencing with Section 3426) of Part 1 of Division 4
26 of the Civil Code), damages may not be recovered
27 against the state or local agency or its employees unless
28 the disclosure was made in bad faith.



# EXHIBIT 8

LIS - 14

LEGISLATIVE INTENT SERVICE          (800) 666-1917

AMENDED IN SENATE JULY 6, 1984
AMENDED IN ASSEMBLY MAY 3, 1983
AMENDED IN ASSEMBLY APRIL 21, 1983

CALIFORNIA LEGISLATURE—1983-84 REGULAR SESSION

## ASSEMBLY BILL                    No. 501

Introduced by Assemblyman Harris

February 7, 1983

An act to add Title 5 (commencing with Section 3426) to
Part 1 of Division 4 of the Civil Code and to add Section 2036.2
to the Code of Civil Procedure, relating to trade secrets.

### LEGISLATIVE COUNSEL'S DIGEST

AB 501, as amended, Harris.  Uniform Trade Secrets Act.
Under existing law, no specific cause of action exists for
misappropriation of a trade secret.
This bill would establish that cause of action, through
enactment in California of the Uniform Trade Secrets Act,
which defines terms, provides for injunctive relief, damages,
or other relief, requirements that a court take measures to
preserve the secrecy of an alleged trade secret by reasonable
means, and a statute of limitations applicable to the cause of
action, among other provisions.
Vote: majority.  Appropriation: no.  Fiscal committee: no.
State-mandated local program: no.

*The people of the State of California do enact as follows:*

1   SECTION 1.   Title 5 (commencing with Section 3426)
2   is added to Part 1 of Division 4 of the Civil Code, to read:

AB 501

— 2 —

## TITLE 5.  UNIFORM TRADE SECRETS ACT

3426. This title may be cited as the Uniform Trade Secrets Act.

3426.1. As used in this title, unless the context requires otherwise:

(a) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means.

(b) "Misappropriation" means:

(1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) Disclosure or use of a trade secret of another without express or implied consent by a person who:

(A) Used improper means to acquire knowledge of the trade secret; or

(B) At the time of disclosure or use, knew or had reason to know that his or her knowledge of the trade secret was:

(i) Derived from or through a person who had utilized improper means to acquire it;

(ii) Acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(iii) Derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) Before a material change of his or her position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

(c) "Person" means a natural person, corporation, business trust, estate, trust, partnership, association, joint venture, government, governmental subdivision or agency, or any other legal or commercial entity.

(d) "Trade secret" means information, including a formula, pattern, compilation, program, device, method, technique, or process, that:

(1) Derives independent economic value, actual or

AB 501

— 3 —

potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

3426.2. (a) Actual or threatened misappropriation may be enjoined. Upon application to the court, an injunction shall be terminated when the trade secret has ceased to exist, but the injunction may be continued for an additional period of time in order to eliminate commercial advantage that otherwise would be derived from the misappropriation.

(b) If the court determines that it would be unreasonable to prohibit future use, an injunction may condition future use upon payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) In appropriate circumstances, affirmative acts to protect a trade secret may be compelled by court order.

3426.3. (a) A complainant may recover damages for the actual loss caused by misappropriation. A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss.

(b) If neither damages nor unjust enrichment caused by misappropriation are provable, the court may order payment of a reasonable royalty for no longer than the period of time the use could have been prohibited.

(c) If willful and or malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice *three times the amount of* any award made under subdivision (a) or (b).

3426.4. If a claim of misappropriation is made in bad faith, a motion to terminate an injunction is made or resisted in bad faith, or willful and or malicious misappropriation exists, the court may award reasonable attorney's fees to the prevailing party.

3426.5. In an action under this title, a court shall preserve the secrecy of an alleged trade secret by

AB 501

— 4 —

1 reasonable means, which may include granting
2 protective orders in connection with discovery
3 proceedings, holding in-camera hearings, sealing the
4 records of the action, and ordering any person involved
5 in the litigation not to disclose an alleged trade secret
6 without prior court approval.
7 3426.6.  An action for misappropriation must be
8 brought within three years after the misappropriation is
9 discovered or by the exercise of reasonable diligence
10 should have been discovered. For the purposes of this
11 section, a continuing misappropriation constitutes a
12 single claim.
13 3426.7.  (a) Except as otherwise expressly provided,
14 this title does not supersede any statute relating to
15 misappropriation of a trade secret, or any statute
16 otherwise regulating trade secrets.
17 (b) This title does not affect the disclosure of a public
18 record by a state or local agency under the California
19 Public Records Act (Chapter 3.5 (commencing with
20 Section 6250) of Division 7 of Title 1 of the Government
21 Code). Any determination as to whether the disclosure of
22 a public record constitutes a misappropriation of a trade
23 secret and the rights and remedies with respect thereto
24 shall be made pursuant to the law in effect before the
25 operative date of this title.
26 3426.8.  This title does not affect any contractual rights
27 or remedies.
28 3426.9.  This title shall be applied and construed to
29 effectuate its general purpose to make uniform the law
30 with respect to the subject of this title among states
31 enacting it.
32 3426.10.  If any provision of this title or its application
33 to any person or circumstances is held invalid, the
34 invalidity does not affect other provisions or applications
35 of the title which can be given effect without the invalid
36 provision or application, and to this end the provisions of
37 this title are severable.
38 3426.11.  This title does not apply to misappropriation
39 occurring prior to ~~January 1, 1984~~ *January 1, 1985*. If a
40 continuing misappropriation otherwise covered by this

— 5 —

AB 501

1 title began before ~~January 1, 1984~~ *January 1, 1985*, this title
2 does not apply to the part of the misappropriation
3 occurring before that date. This title does apply to the
4 part of the misappropriation occurring on or after that
5 date unless the appropriation was not a misappropriation
6 under the law in effect before the operative date of this
7 title.
8 SEC. 2.  Section 2036.2 is added to the Code of Civil
9 Procedure, to read:
10 2036.2.  In any action alleging the misappropriation of
11 a trade secret under the Uniform Trade Secrets Act
12 (Title 5 (commencing with Section 3426) of Part 1 of
13 Division 4 of the Civil Code), before commencing
14 discovery relating to the trade secret under Chapter 2
15 (commencing with Section 1985) or Article 3
16 (commencing with Section 2016) of Chapter 3 of this
17 title, the party alleging the misappropriation shall
18 identify the trade secret with *reasonable particularity*
19 subject to any orders which may be appropriate under
20 Section 3426.5 of the Civil Code.

# EXHIBIT 9

SENATE COMMITTEE ON JUDICIARY
Barry Keene, Chairman
1983-84 Regular Session

AB 501 (Harris)                                           A
As amended July 6                                         B
Civil Code and Code of Civil Procedure
BW                                                        5
                                                          0
                                                          1

UNIFORM TRADE SECRETS ACT

HISTORY

Source:   National Conference of Commissioners on
          Uniform State Laws

Prior Legislation:  None

Support:  General Electric; Ford Motor Company

Opposition:   American Electronics Association;
              Patent, Trademark, and Copyright
              Section of the State Bar;
              Conference of Delegates of the
              State Bar; Genest Technologies;
              Paramount Fitness Equipment Corp.,
              Ltd; Terminal Data Corp; JBL, Inc.

Assembly Floor Vote:  Ayes 76 - Noes 0

KEY ISSUE

SHOULD MODEL LEGISLATION RECOMMENDED BY THE
NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM
STATE LAWS GOVERNING CIVIL REMEDIES FOR
MISAPPROPRIATION OF TRADE SECRETS BE ENACTED?

(More)

LIS - 7

LEGISLATIVE INTENT SERVICE    (800) 666-1917

AB 501 (Harris)
Page 2

## PURPOSE

Existing law contains a number of provisions concerning the dissemination of trade secrets.

This bill would establish a statutory scheme--the Uniform Trade Secrets Act--to protect confidential business information. In particular, the bill would:

--provide for the enjoining of actual or threatened misappropriation of a trade secret;

--permit a complainant to recover actual damages or unjust enrichment for the loss caused by the improper acquisition or disclosure of a trade secret. If neither damages nor unjust enrichment caused by misappropriation were provable, the court could order payment of a reasonable royalty for no longer that the period the use could have been prohibited. Treble exemplary damages would be permitted for willful or malicious misappropriation;

--authorize the award of reasonable attorneys' fees to the prevailing party when a claim of misappropriation was made in bad faith, or a motion to terminate an injunction was made or resisted in bad faith, or where willful or malicious misappropriation was found.

The purpose of the bill is to codify further the laws governing misappropriation of trade secrets through the enactment of model legislation.

(More)

LEGISLATIVE INTENT SERVICE     (800) 666-1917

AB 501 (Harris)
Page 3

<div align="center">COMMENT</div>

1.  <u>Highlights of analysis</u>

    --The bill would create a new definition of
    the term "trade secret."  (See Comment 3).

    --The Patent, Trademark, and Copyright Section
    of the State Bar prefers that the present
    definition of "trade secret" remain in
    force.  (See Comment 4).

    --Despite the novel provisions of the Act,
    trade secret law currently in force would
    govern the issue of whether disclosure of a
    public record constituted an unauthorized
    misappropriation. (See Comment 5).

    --Non-controversial provisions of the bill are
    summarized in Comment 6.

2.  <u>Brainchild of the National Conference</u>

    In 1979, the Uniform Trade Secrets Act,
    written by the National Conference of
    Commissioners on Uniform State Laws
    (hereinafter "National Conference") was
    recommended for enactment in all states by
    that body, and was approved by the American
    Bar Association in 1980.  Eight other states
    (Minnesota, Kansas, Idaho, Washington,
    Arkansas, Delaware, Louisiana, and Indiana)
    have passed a version of this legislation.

    The National Conference drafted the Act
    because it thought that in general "there
    [was] undue uncertainty concerning the

<div align="right">(More)</div>



(800) 666-1917    LEGISLATIVE INTENT SERVICE

AB 501 (Harris)
Page 4

parameter of trade secret protection, and the appropriate remedies for misappropriation of a trade secret." Although both the Act and traditional trade secret law contain general concepts, the main contribution of the Act, it is stated, is that it creates unitary definitions of the terms "trade secret" and "misappropriation," and prescribes a single statute of limitations for the various property, quasi-contractual, and breach of fiduciary relationship theories of noncontractual liability utilized under common law. The sponsor believes that the Act codifies the results of the better reasoned cases concerning the remedies for trade secret misappropriation.

3.   The parameters of a trade secret

(a)  Current definition of a trade secret

Under existing case law trade secrets "may consist of any formula, pattern, device, or compilation of information which is used in one's business and which gives him an opportunity to obtain an advantage over competitors who do not know or use it." Diodes, Inc. V. Franzen, 260 Cal. App. 2d 244 at 251 (1968). Penal Code 499c, the criminal statute prohibiting misappropriation of confidential business information, sets forth a comparable definition.

(More)

LEGISLATIVE INTENT SERVICE    (800) 666-1917

AB 501 (Harris)
Page 5

(b) New meaning under the Act

The bill eschews the existing definition
of a trade secret in favor of a new one:
information that (1) derives independent
economic value from not being generally
known to, and not being readily
ascertainable by proper means by, other
persons who can obtain economic value from
its disclosure or use; and (2) is the
subject of efforts that are reasonable
under the circumstances to maintain its
secrecy.

4. State Bar objections to the new definition

The Patent, Trademark, and Copyright Section
of the State Bar strongly opposes this change.

(a) Difficulty in determining what is readily
ascertainable

That group argues that inclusion of the
phrase "readily ascertainable" only
muddles the meaning of the term trade
secret. If a scientist time could
discover within six months time a complex
formula through reverse engineering or a
literature search, the confidential
information could be considered readily
ascertainable. The Bar questions whether
a firm would have an actionable claim if a
competitor misappropriated business
information which it soon would have
discovered through legitimate scientific
means.

(More)



(800) 666-1917    LEGISLATIVE INTENT SERVICE

AB 501 (Harris)
Page 6

This opponent believes that making the
existence of a trade secret dependent upon
the information not being "readily
ascertainable" invites the various parties
to speculate on the time needed to
discover a secret. See, e.g., <u>Steenhoven
v. College Life Ins. Co. of America</u>, 458
N.E. 661 (1984) (Ind. App. Ct.). <u>on
rehearing</u> 460 N.E. 973 (1984). (This case
concerned the issue of whether insurance
company policyholder information was
"readily" ascertainable").

(b) <u>Different definition under the criminal
statute</u>

Further, the State Bar Section notes,
since the Penal Code Section 499c
definition contains no such requirement,
adoption of this formulate would divorce
the civil law definition of a trade secret
from the criminal law one, thereby
generating unneeded confusion.

(c) <u>Possible loss of jobs to other states</u>

Finally, this opponent fears that passage
of the bill would endanger the
confidentiality of the trade secrets of
firms doing business in California.  If
companies doing business in other
jurisdiction obtained this information,
commerce and jobs could conceivably flow
out of state.

(More)

(800) 666-1917    LEGISLATIVE INTENT SERVICE

AB 501 (Harris)
Page 7

(d)  Amendments sought by the Bar Section

The Bar wants the disputed language--i.e.,
ready ascertainability by other persons
who can obtain economic value from
disclosure or use--deleted from the
definition of trade secret.  This change,
the opponent states, would eliminate the
perceived ambiguity and conform the
definition under the Act with the meaning
of trade secrets under the criminal
statute.

5.  Disclosure of trade secrets under the Public
Records Act

(a)  Relevant provisions of the bill

The bill specifies that passage of the Act
would not affect the disclosure of
information by state or local agencies
under the Public Records Act.  That
statute exempts agencies from releasing
records which may not be disclosed
pursuant to other provisions of state law.

The determination of whether the
disclosure of a public record constitutes
a misappropriation of a trade secret would
be made under the law in effect before the
operative date of this bill.

(b)  Industry objections

The American Electronics Association
complains that the latter provision would
freeze the evolution of trade secret law.

(More)

(800) 666-1917

LEGISLATIVE INTENT SERVICE

AB 501 (Harris)
Page 8

While all cases of misappropriation not involving the disclosure of public records would be governed by the law contained in the Uniform Trade Secrets Act, in those instances involving the release of official records, the law superseded by the Act would apply.

SHOULD NOT THE BILL SET FORTH A UNIFIED BODY OF TRADE SECRET LAW, INSTEAD OF ESTABLISHING SEPARATE RULES FOR THOSE CASES CONCERNING THE DISCLOSURE OF PUBLIC RECORDS?

6. Other provisions of AB 501

   (a) Litigation procedures in trade secret cases

   The bill would provide that, in any action alleging misappropriation under the Act, before commencing discovery relating to the trade secret, the party alleging the misappropriation would have to identify the trade secret with reasonable particularity, subject to any protective orders which may be appropriate. Further, a court could use reasonable means, such as protective orders, sealing of records, and in-camera hearings, to preserve the secrecy of a trade secret in an action under the Act.

   (b) No effect on existing statutes or contracts

(More)

LEGISLATIVE INTENT SERVICE    (800) 666-1917

AB 501 (Harris)
Page 9

AB 501 would provide that the Act would
not affect any contractual rights or
remedies and that, except as otherwise
expressly provided, it would not supersede
any statute relating to the
misappropriation of a trade secret.

(c) <u>Effective date of the Act</u>

The bill's provisions would not apply to
misappropriations occurring prior to
January 1, 1985.  The Act would apply to
the part of a continuing misappropriation
occurring on or after that date, unless it
was not a misappropriation under the law
in effect before the bill's operative
date.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*



LEGISLATIVE INTENT SERVICE    (800) 666-1917

# EXHIBIT 10

SENATE COMMITTEE ON JUDICIARY
Barry Keene, Chairman
1983-84 Regular Session

AB 501 (Harris)
As amended July 6
Civil Code and Code of Civil Procedure
BW

A
B

5
0
1

(800) 666-1917

LEGISLATIVE INTENT SERVICE

UNIFORM TRADE SECRETS ACT

HISTORY

Source:   National Conference of Commissioners on
          Uniform State Laws

Prior Legislation:  None

Support:  General Electric; Ford Motor Company

Opposition:  American Electronics Association;
             Patent, Trademark, and Copyright
             Section of the State Bar;
             Conference of Delegates of the
             State Bar; Genest Technologies;

Assembly :

6-0

SHOULD MO
NATIONAL
STATE LAW
MISAPPROP

SENATE JUDICIARY

| | MEMBER | ROOM # | PHONE | AYE | NO |
|---|---|---|---|---|---|
| R | Doolittle | 4090 | 5-5788 | | |
| D | Lockyer | 4081 | 5-6671 | ✓ | |
| R | Marks | 2070 | 5-1412 | ✓ | |
| D | Petris | 5080 | 5-6577 | | |
| D | Presley | 4048 | 5-9781 | ✓ | |
| R | Richardson | 3063 | 5-3688 | ✓ | |
| D | Roberti | 205 | 5-8390 | ✓ | |
| D | Torres | 4062 | 5-3456 | | |
| D | Watson | 4040 | 5-5215 | | |
| R | Davis | 2046 | 5-8373 | ✓ | |
| D | Keene | 2032 | 5-3375 | | |

SENATE COMMITTEE ON JUDICIARY
Barry Keene, Chairman
1983-84 Regular Session

AB 501 (Harris)
As amended July 6
Civil Code and Code of Civil Procedure
BW

A
B

5
0
1

## UNIFORM TRADE SECRETS ACT

### HISTORY

Source:  National Conference of Commissioners on
Uniform State Laws

Prior Legislation:  None

Support:  General Electric; Ford Motor Company

Opposition:  American Electronics Association;
Patent, Trademark, and Copyright
Section of the State Bar;
Conference of Delegates of the
State Bar; Genest Technologies;
Paramount Fitness Equipment Corp.,
Ltd; Terminal Data Corp; JBL, Inc.

Assembly Floor Vote:  Ayes 76 - Noes 0

### KEY ISSUE

SHOULD MODEL LEGISLATION RECOMMENDED BY THE
NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM
STATE LAWS GOVERNING CIVIL REMEDIES FOR
MISAPPROPRIATION OF TRADE SECRETS BE ENACTED?

(More)

LEGISLATIVE INTENT SERVICE    (800) 666-1917

BG-22

AB 501 (Harris)
Page 2

## PURPOSE

Existing law contains a number of provisions concerning the dissemination of trade secrets.

This bill would establish a statutory scheme--the Uniform Trade Secrets Act--to protect confidential business information. In particular, the bill would:

--provide for the enjoining of actual or threatened misappropriation of a trade secret;

--permit a complainant to recover actual damages or unjust enrichment for the loss caused by the improper acquisition or disclosure of a trade secret. If neither damages nor unjust enrichment caused by misappropriation were provable, the court could order payment of a reasonable royalty for no longer that the period the use could have been prohibited. Treble exemplary damages would be permitted for willful or malicious misappropriation;

--authorize the award of reasonable attorneys' fees to the prevailing party when a claim of misappropriation was made in bad faith, or a motion to terminate an injunction was made or resisted in bad faith, or where willful or malicious misappropriation was found.

The purpose of the bill is to codify further the laws governing misappropriation of trade secrets through the enactment of model legislation.

(More)

LEGISLATIVE INTENT SERVICE    (800) 666-1917

BG-23

AB 501 (Harris)
Page 3

COMMENT

1. Highlights of analysis

   --The bill would create a new definition of
   the term "trade secret."  (See Comment 3).

   --The Patent, Trademark, and Copyright Section
   of the State Bar prefers that the present
   definition of "trade secret" remain in
   force.  (See Comment 4).

   --Despite the novel provisions of the Act,
   trade secret law currently in force would
   govern the issue of whether disclosure of a
   public record constituted an unauthorized
   misappropriation. (See Comment 5).

   --Non-controversial provisions of the bill are
   summarized in Comment 6.

2. Brainchild of the National Conference

   In 1979, the Uniform Trade Secrets Act,
   written by the National Conference of
   Commissioners on Uniform State Laws
   (hereinafter "National Conference") was
   recommended for enactment in all states by
   that body, and was approved by the American
   Bar Association in 1980.  Eight other states
   (Minnesota, Kansas, Idaho, Washington,
   Arkansas, Delaware, Louisiana, and Indiana)
   have passed a version of this legislation.

   The National Conference drafted the Act
   because it thought that in general "there
   [was] undue uncertainty concerning the

                                    (More)

LEGISLATIVE INTENT SERVICE    (800) 666-1917

B6-24



AB 501 (Harris)
Page 4

parameter of trade secret protection, and the
appropriate remedies for misappropriation of a
trade secret."  Although both the Act and
traditional trade secret law contain general
concepts, the main contribution of the Act, it
is stated, is that it creates unitary
definitions of the terms "trade secret" and
"misappropriation," and prescribes a single
statute of limitations for the various
property, quasi-contractual, and breach of
fiduciary relationship theories of
noncontractual liability utilized under common
law.  The sponsor believes that the Act
codifies the results of the better reasoned
cases concerning the remedies for trade secret
misappropriation.

3.    The parameters of a trade secret

(a)  Current definition of a trade secret

Under existing case law trade secrets "may
consist of any formula, pattern, device,
or compilation of information which is
used in one's business and which gives him
an opportunity to obtain an advantage over
competitors who do not know or use it."
Diodes, Inc. V. Franzen, 260 Cal. App. 2d
244 at 251 (1968).  Penal Code 499c, the
criminal statute prohibiting
misappropriation of confidential business
information, sets forth a comparable
definition.

(More)



LEGISLATIVE INTENT SERVICE    (800) 666-1917

BG-25

AB 501 (Harris)
Page 5

(b) <u>New meaning under the Act</u>

The bill eschews the existing definition of a trade secret in favor of a new one: information that (1) derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

4. <u>State Bar objections to the new definition</u>

The Patent, Trademark, and Copyright Section of the State Bar strongly opposes this change.

(a) <u>Difficulty in determining what is readily ascertainable</u>

That group argues that inclusion of the phrase "readily ascertainable" only muddles the meaning of the term trade secret. If a scientist time could discover within six months time a complex formula through reverse engineering or a literature search, the confidential information could be considered readily ascertainable. The Bar questions whether a firm would have an actionable claim if a competitor misappropriated business information which it soon would have discovered through legitimate scientific means.

(More)



LEGISLATIVE INTENT SERVICE    (800) 666-1917

B626

AB 501 (Harris)
Page 6

This opponent believes that making the existence of a trade secret dependent upon the information not being "readily ascertainable" invites the various parties to speculate on the time needed to discover a secret. See, e.g., <u>Steenhoven v. College Life Ins. Co. of America</u>, 458 N.E. 661 (1984) (Ind. App. Ct.), <u>on rehearing</u> 460 N.E. 973 (1984). (This case concerned the issue of whether insurance company policyholder information was "readily" ascertainable").

(b) <u>Different definition under the criminal statute</u>

Further, the State Bar Section notes, since the Penal Code Section 499c definition contains no such requirement, adoption of this formulate would divorce the civil law definition of a trade secret from the criminal law one, thereby generating unneeded confusion.

(c) <u>Possible loss of jobs to other states</u>

Finally, this opponent fears that passage of the bill would endanger the confidentiality of the trade secrets of firms doing business in California. If companies doing business in other jurisdiction obtained this information, commerce and jobs could conceivably flow out of state.

(More)

(800) 666-1917    LEGISLATIVE INTENT SERVICE

B627

AB 501 (Harris)
Page 7

(d)  Amendments sought by the Bar Section

The Bar wants the disputed language--i.e.,
ready ascertainability by other persons
who can obtain economic value from
disclosure or use--deleted from the
definition of trade secret.  This change,
the opponent states, would eliminate the
perceived ambiguity and conform the
definition under the Act with the meaning
of trade secrets under the criminal
statute.

5.  Disclosure of trade secrets under the Public
Records Act

(a)  Relevant provisions of the bill

The bill specifies that passage of the Act
would not affect the disclosure of
information by state or local agencies
under the Public Records Act.  That
statute exempts agencies from releasing
records which may not be disclosed
pursuant to other provisions of state law.

The determination of whether the
disclosure of a public record constitutes
a misappropriation of a trade secret would
be made under the law in effect before the
operative date of this bill.

(b)  Industry objections

The American Electronics Association
complains that the latter provision would
freeze the evolution of trade secret law.

(More)

(800) 666-1917    LEGISLATIVE INTENT SERVICE

BG-28

AB 501 (Harris)
Page 8

While all cases of misappropriation not
involving the disclosure of public records
would be governed by the law contained in
the Uniform Trade Secrets Act, in those
instances involving the release of
official records, the law superseded by
the Act would apply.

SHOULD NOT THE BILL SET FORTH A UNIFIED
BODY OF TRADE SECRET LAW, INSTEAD OF
ESTABLISHING SEPARATE RULES FOR THOSE
CASES CONCERNING THE DISCLOSURE OF PUBLIC
RECORDS?

6.   Other provisions of AB 501

(a)  Litigation procedures in trade secret
cases

The bill would provide that, in any action
alleging misappropriation under the Act,
before commencing discovery relating to
the trade secret, the party alleging the
misappropriation would have to identify
the trade secret with reasonable
particularity, subject to any protective
orders which may be appropriate.  Further,
a court could use reasonable means, such
as protective orders, sealing of records,
and in-camera hearings, to preserve the
secrecy of a trade secret in an action
under the Act.

(b)  No effect on existing statutes or
contracts

(More)

(800) 666-1917    LEGISLATIVE INTENT SERVICE

BG-29

AB 501 (Harris)
Page 9

AB 501 would provide that the Act would
not affect any contractual rights or
remedies and that, except as otherwise
expressly provided, it would not supersede
any statute relating to the
misappropriation of a trade secret.

(c) Effective date of the Act

The bill's provisions would not apply to
misappropriations occurring prior to
January 1, 1985.  The Act would apply to
the part of a continuing misappropriation
occurring on or after that date, unless it
was not a misappropriation under the law
in effect before the bill's operative
date.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

LEGISLATIVE INTENT SERVICE    (800) 666-1917

B6-30

# EXHIBIT 11

LIS - 1e



LEGISLATIVE INTENT SERVICE   ·   (800) 666-1917

AMENDED IN SENATE AUGUST 15, 1984
AMENDED IN SENATE JULY 6, 1984
AMENDED IN ASSEMBLY MAY 3, 1983
AMENDED IN ASSEMBLY APRIL 21, 1983

CALIFORNIA LEGISLATURE—1983-84 REGULAR SESSION

## ASSEMBLY BILL                    No. 501

Introduced by Assemblyman Harris

February 7, 1983

An act to add Title 5 (commencing with Section 3426) to Part 1 of Division 4 of the Civil Code and to add Section 2036.2 to the Code of Civil Procedure, relating to trade secrets.

### LEGISLATIVE COUNSEL'S DIGEST

AB 501, as amended, Harris.   Uniform Trade Secrets Act.

Under existing law, no specific cause of action exists for misappropriation of a trade secret.

This bill would establish that cause of action, through enactment in California of the Uniform Trade Secrets Act, which defines terms, provides for injunctive relief, damages, or other relief, requirements that a court take measures to preserve the secrecy of an alleged trade secret by reasonable means, and a statute of limitations applicable to the cause of action, among other provisions.

Vote: majority. Appropriation: no. Fiscal committee: no. State-mandated local program: no.

*The people of the State of California do enact as follows:*

1    SECTION 1.   Title 5 (commencing with Section 3426)
2  is added to Part 1 of Division 4 of the Civil Code, to read:

AB 501

— 2 —

## TITLE 5. UNIFORM TRADE SECRETS ACT

1
2  3426. This title may be cited as the Uniform Trade
3  Secrets Act.
4  3426.1. As used in this title, unless the context requires
5  otherwise:
6
7  (a) "Improper means" includes theft, bribery,
8  misrepresentation, breach or inducement of a breach of
9  a duty to maintain secrecy, or espionage through
10  electronic or other means. *Reverse engineering or*
11  *independent derivation alone shall not be considered*
12  *improper means.*
13  (b) "Misappropriation" means:
14  (1) Acquisition of a trade secret of another by a person
15  who knows or has reason to know that the trade secret
16  was acquired by improper means; or
17  (2) Disclosure or use of a trade secret of another
18  without express or implied consent by a person who:
19  (A) Used improper means to acquire knowledge of
20  the trade secret; or
21  (B) At the time of disclosure or use, knew or had
22  reason to know that his or her knowledge of the trade
23  secret was:
24  (i) Derived from or through a person who had utilized
25  improper means to acquire it;
26  (ii) Acquired under circumstances giving rise to a
27  duty to maintain its secrecy or limit its use; or
28  (iii) Derived from or through a person who owed a
29  duty to the person seeking relief to maintain its secrecy
30  or limit its use; or
31  (C) Before a material change of his or her position,
32  knew or had reason to know that it was a trade secret and
33  that knowledge of it had been acquired by accident or
34  mistake.
35  (c) "Person" means a natural person, corporation,
36  business trust, estate, trust, partnership, association, joint
37  venture, government, governmental subdivision or
38  agency, or any other legal or commercial entity.
39  (d) "Trade secret" means information, including a
40  formula, pattern, compilation, program, device, method,

AB 501

— 3 —

1  technique, or process, that:
2  (1) Derives independent economic value, actual or
3  potential, from not being generally known to ; ~~and not~~
4  being readily ascertainable by proper means by; ~~the~~
5  public or to other persons who can obtain economic value
6  from its disclosure or use; and
7  (2) Is the subject of efforts that are reasonable under
8  the circumstances to maintain its secrecy.
9  3426.2. (a) Actual or threatened misappropriation
10  may be enjoined. Upon application to the court, an
11  injunction shall be terminated when the trade secret has
12  ceased to exist, but the injunction may be continued for
13  an additional period of time in order to eliminate
14  commercial advantage that otherwise would be derived
15  from the misappropriation.
16  (b) If the court determines that it would be
17  unreasonable to prohibit future use, an injunction may
18  condition future use upon payment of a reasonable
19  royalty for no longer than the period of time the use could
20  have been prohibited.
21  (c) In appropriate circumstances, affirmative acts to
22  protect a trade secret may be compelled by court order.
23  3426.3. (a) A complainant may recover damages for
24  the actual loss caused by misappropriation. A
25  complainant also may recover for the unjust enrichment
26  caused by misappropriation that is not taken into account
27  in computing damages for actual loss.
28  (b) If neither damages nor unjust enrichment caused
29  by misappropriation are provable, the court may order
30  payment of a reasonable royalty for no longer than the
31  period of time the use could have been prohibited.
32  (c) If willful ~~or~~ and malicious misappropriation exists,
33  the court may award exemplary damages in an amount
34  not exceeding twice the amount of ~~twice~~ any award
35  made under subdivision (a) or (b).
36  3426.4. If a claim of misappropriation is made in bad
37  faith, a motion to terminate an injunction is made or
38  resisted in bad faith, or willful ~~or~~ and malicious
39  misappropriation exists, the court may award reasonable
40  attorney's fees to the prevailing party.



AB 501

— 4 —

1  3426.5.  In an action under this title, a court shall
2  preserve the secrecy of an alleged trade secret by
3  reasonable means, which may include granting
4  protective orders in connection with discovery
5  proceedings, holding in-camera hearings, sealing the
6  records of the action, and ordering any person involved
7  in the litigation not to disclose an alleged trade secret
8  without prior court approval.
9  3426.6.  An action for misappropriation must be
10  brought within three years after the misappropriation is
11  discovered or by the exercise of reasonable diligence
12  should have been discovered. For the purposes of this
13  section, a continuing misappropriation constitutes a
14  single claim.
15  3426.7.  (a) Except as otherwise expressly provided,
16  this title does not supersede any statute relating to
17  misappropriation of a trade secret, or any statute
18  otherwise regulating trade secrets.
19  (b) This title does not affect (1) contractual remedies,
20  whether or not based upon misappropriation of a trade
21  secret, (2) other civil remedies that are not based upon
22  misappropriation of a trade secret, or (3) criminal
23  remedies, whether or not based upon misappropriation
24  of a trade secret.
25  ~~(b)~~
26  (c) This title does not affect the disclosure of a ~~public~~
27  record by a state or local agency under the California
28  Public Records Act (Chapter 3.5 (commencing with
29  Section 6250) of Division 7 of Title 1 of the Government
30  Code). Any determination as to whether the disclosure of
31  a public record under the *California Public Records Act*
32  constitutes a misappropriation of a trade secret and the
33  rights and remedies with respect thereto shall be made
34  pursuant to the law in effect before the operative date of
35  this title.
36  ~~3426.8.~~  ~~This title does not affect any contractual rights~~
37  ~~or remedies.~~
38  ~~3426.9.~~
39  3426.8.  This title shall be applied and construed to
40  effectuate its general purpose to make uniform the law

— 5 —

AB 501

1  with respect to the subject of this title among states
2  enacting it.
3  ~~3426.10.~~
4  3426.9.  If any provision of this title or its application
5  to any person or circumstances is held invalid, the
6  invalidity does not affect other provisions or applications
7  of the title which can be given effect without the invalid
8  provision or application, and to this end the provisions of
9  this title are severable.
10  ~~3426.11.~~
11  3426.10.  This title does not apply to misappropriation
12  occurring prior to January 1, 1985. If a continuing
13  misappropriation otherwise covered by this title began
14  before January 1, 1985, this title does not apply to the part
15  of the misappropriation occurring before that date. This
16  title does not apply to the part of the misappropriation
17  occurring on or after that date unless the appropriation
18  was not a misappropriation under the law in effect before
19  the operative date of this title.
20  SEC. 2.  Section 2036.2 is added to the Code of Civil
21  Procedure, to read:
22  2036.2.  In any action alleging the misappropriation of
23  a trade secret under the Uniform Trade Secrets Act
24  (Title 5 (commencing with Section 3426) of Part 1 of
25  Division 4 of the Civil Code), before commencing
26  discovery relating to the trade secret under Chapter 2
27  (commencing with Section 1985) or Article 3
28  (commencing with Section 2016) of Chapter 3 of this
29  title, the party alleging the misappropriation shall
30  identify the trade secret with reasonable particularity
31  subject to any orders which may be appropriate under
32  Section 3426.5 of the Civil Code.

O

# EXHIBIT 12

AB  501

CONCURRENCE IN SENATE AMENDMENTS

AB  501  (_____Harris_____)  As Amended:  August 15, 1984

ASSEMBLY VOTE  76-0  (  May 5, 1983  ) SENATE VOTE  40-0  (August 27, 1984)

Original Committee Reference:  JUD.

DIGEST

Existing law provides criminal penalties for misappropriation of trade secrets but does not provide civil remedies.

As passed by the Assembly, this bill provided civil remedies for misappropriation of trade secrets by establishing the Uniform Trade Secrets Act.

Specifically, the bill:

1) Defined a "trade secret" as information which is a source of economic benefit to its possessor because it is not generally known or readily ascertainable, and reasonable efforts are made to maintain its secrecy.

2) Provided for the enjoining of actual or threatened misappropriation, as defined, of a trade secret.

3) Allowed a complainant, who would be required to identify the particular trade secret, to recover damages for losses or unjust enrichment caused by the misappropriation.  If damages or unjust enrichment could not be proved, the court could order payment of a reasonable royalty for a limited time.  Exemplary damages would be permitted for willful or malicious misappropriation.

4) Authorized an award of reasonable attorney's fees to the prevailing party if bad faith or willful and malicious misappropriation was found.

5) Directed the courts to use reasonable means, such as in-camera hearings or sealing of court records, to protect the trade secrets from disclosure during court proceedings.

6) Provided that this bill would not affect the disclosure of a public record by a state or public agency.  Any determination of whether the disclosure of a public record would constitute a misappropriation of a trade secret would be made pursuant to the law in effect before the operative date of this bill.

7) Specified a statute of limitations for acts occurring before January 1, 1984.

-continued-

ASSEMBLY OFFICE OF RESEARCH                      AB  501

(800) 666-1917

LEGISLATIVE INTENT SERVICE

The Senate amendments:

1) Provide that reverse engineering or independent derivation alone will not be considered improper means of obtaining trade secrets.

2) Delete from the definition of "trade secret" information which is not readily available by proper means.

3) Provide that before commencing action under the bill, a complainant must identify the trade secret with reasonable particularity.

4) Authorize an award of reasonable attorney's fees to the prevailing party if willful or malicious misappropriation is found.

5) Provide that this title does not affect any of the following, whether or not they are based on misappropriation of a trade secret:

   a) Contractual remedies.

   b) Other civil remedies.

   c) Criminal remedies.

6) Extend the statute of limitations to acts occurring before January 1, 1985.

FISCAL EFFECT

None



8/29/84
7/am,sp/AFA-112:28-29

ASSEMBLY OFFICE OF RESEARCH